**Nathaniel J. PLASS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted on Reargument Sept. 9, 1982.

Decided Feb. 4, 1983.

Myron T. Steele (argued) and John Williams (argued), Prickett, Jones, Elliott, Kristol & Schnee, Dover, for defendant-appellant.

Dana C. Reed, Deputy Atty. Gen., Dover (argued) and John A. Parkins, Jr., Deputy Atty. Gen. (argued), Wilmington, for plaintiff-appellee.

Before HERRMANN, C.J., QUILLEN and HORSEY, JJ.

QUILLEN, Justice:

The defendant's appeal has in effect been given a *de novo* appellate hearing on reargument and this opinion supercedes our prior *per curiam* opinion which is hereby withdrawn. It should be noted that present counsel for the defendant first entered the case to handle the reargument in this Court. The defendant seeks reversal of his conviction of Murder in the First Degree under 11 *Del.C.* § 636(a)(1).[1]

In the language of the defendant's brief on reargument, the contentions, with the order of the first two reversed, are as follows:

I.  It was reversible error not to grant the defendant's motion to dismiss in this first degree murder prosecution on the basis that the State failed to establish the requisite element of intent by proof beyond a reasonable doubt.

II.  It was plain error to charge the jury in this first degree murder prosecution that "a person is presumed to intend the natural and probable consequences of his act."

III.  The Trial Court committed plain error by failing to give adequate cautionary instructions to the jury dur-

---

1.  11 *Del.C.* § 636(a)(1) provides:

"§ 636. Murder in the first degree; class A felony.

(a) A person is guilty of murder in the first degree when:

(1) He intentionally causes the death of another person; * * *."

ing the trial proceeding not to read or listen to news media coverage of this first degree murder prosecution.

We turn initially to the facts.

The defendant was convicted by a jury of the murder of his four-week old son. The defendant's defense was alibi. We state the evidence in support of the conviction.

The infant was found by his mother in his crib, apparently lifeless, at about 9:30 p.m. The mother rushed him to the hospital where he was examined and pronounced dead. The certifying physician placed the time of death at between 6:30 and 8:30 p.m.

Other State's evidence was to the following effect:

The infant died of cerebral lacerations and hemorrhaging caused by severe skull fractures resulting from blunt-force injuries. In addition, the Medical Examiner's autopsy revealed hemorrhages of the lungs, covering of the heart, large intestine, thymus gland, spleen, and kidneys. The infant also suffered eight broken ribs, numerous external bruises, and swelling. The conclusion of the Medical Examiner was that "the infant was either hit with some blunt object or else was hit against a blunt object or thrown against a blunt object."

The mother testified that the last contact she had with the child was when she fed him at 5:30 p.m.; that the child appeared to be normal at that time; that after the feeding, she went out with friends, leaving the child in the care of the defendant.

Neighbors testified that shortly after the mother departed, noises were heard emanating from the defendant's trailer near the bedroom where the baby slept. The noises were variously described as: "sounding like somebody falling or being pushed against the wall" and "somebody falling or knocking something over." The crying of a baby coincided with the noise. After the noise stopped, the defendant was seen peering out of the bathroom window between 7:45 and 8:00 p.m.

Important to the State's case was the testimony of the defendant's fellow-inmate in the Delaware Correctional Center who testified that, on at least three occasions, the defendant discussed the case with him and made certain admissions. The text of the fellow-inmate's testimony was as follows:

"Q. Would you relate basically what Nathaniel Plass related to you while you both were in prison?

A. Well, he asked me about some points of law and he wanted me to describe his criminal charge; being murder of a four-month-old baby. He asked me several questions of points of law which I, at that time, explained to him fully.[2]

During our conversation he told me that what he did to the baby could not have resulted in its death. He explained to me that he was minding this child. He said the baby was crying continuously. He stated that it got on his nerves. He went in to where the baby was. He took a pillow and placed it over the baby's head. Tried to stop it from crying. It didn't do any good. He punched the baby several times. He then picked the baby up and shook it and it fell out of his hands to the floor. Then he put it back, wherever it was.

Q. Was this story told to you on more than one occasion?

A. Yes, sir, it was.

Q. Do you remember approximately how many times?

A. Three times.

Q. Did Mr. Plass ever relate where the mother of the child was when this occurred?

A. He said that the mother was out shopping or was not there at the time."

As noted above, the jury returned a verdict of guilty to murder in the first degree. During the subsequent penalty phase of the trial, the jury determined that life imprisonment without eligibility for probation or

**2.** According to the record, the fellow-inmate was a self-professed jail-house lawyer.

parole, and not the death penalty, should be imposed.[3]

## I

■ We turn first to the contention that the evidence adduced was legally insufficient to permit the jury to conclude that the requisite intent for Murder in the First Degree had been established. The defendant was charged with intentionally causing the death of his child by beating him about the head and body. Intentionally is defined for present purposes by 11 *Del.C.* § 231(a)(1) which reads as follows:

"§ 231. Definitions relating to state of mind.

(a) *'Intentionally'*.—A person acts intentionally with respect to an element of an offense when:

(1) If the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause that result; * * *."

Although the situation (homicide of child caused by a parent) may not be a typical first degree murder situation, reasonably viewing all of the circumstances in the light most favorable to the State [*Henry v. State,* Del.Supr., 298 A.2d 327, 328 (1972)], we find there was sufficient evidence, recited *supra,* to support the jury's conclusion as to intent to kill. It is a finding that a rational trier of fact could reasonably make beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), rehearing denied 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *Holden v. State,* Del.Supr., 305 A.2d 320, 322 (1973).

■ The thrust of the defendant's argument concerns a special statutory provision relating to intent, 11 *Del.C.* § 306(c)(1), which reads:

"(c) Notwithstanding any other provision of this Criminal Code, the following rebuttable presumptions are expressly preserved:

(1) A person is presumed to intend the natural and probable consequences of his act."

The defendant argues that this provision is unconstitutional "as an impermissible means whereby the State may attempt to shift its burden of persuasion to a criminal defendant in contravention of the due process rights guaranteed to every criminal defendant by the Fourteenth Amendment to the United States Constitution." The issue is raised by the United States Supreme Court's decision in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). We note that the present case was tried after the *Sandstrom* decision.

Although the subject of presumptions in judicial opinions has perhaps been the subject of more weight than light and the area of the law is confusing, this contention of the defendant must be rejected. Our reasoning is two-fold, common sense and statutory.

As a matter of common sense, in judging the sufficiency of the evidence as to state of mind, the jury must be able to weigh the conduct of the defendant. Otherwise, in most situations, the only evidence would be the defendant's own self-interested testimony. So we start with the proposition that the jury must be permitted, among other evidentiary alternatives, to infer that the defendant intended the natural and probable consequences of his act. If, on a given set of facts, such an inference is a conclusion that could be reached by a reasonable jury beyond a reasonable doubt, the evidence is sufficient. In this appeal, we have found that to be the case. To state the common sense proposition in legal terms, there is a rational connection between the fact proved and the fact inferred through the statutory "rebuttable presumption". *County Court of Ulster County v. Allen,* 442 U.S. 140, 165, 99 S.Ct. 2213, 2228–29, 60 L.Ed.2d 777 (1979).

---

**3.** Our punishment statute for first degree murder provides exclusively for either one or the other. 11 *Del.C.* § 4209.

Turning to the precise provisions of the Code, it is desirable to look at the instant issue in its full context of 11 *Del.C.* § 306.[4] The federal Constitution, as set forth in the *Sandstrom* case, would prohibit a statute which amounts to a conclusive presumption (i.e. directs the jury to find intent from the basic facts) or shifts the burden of persuasion to the defendant (i.e. violates the constitutional requirement that the State must prove every essential element of the offense beyond a reasonable *doubt*). In our opinion, our Statute does neither. In § 306(e) it is expressly provided that, if the Court tells the jury of the existence of a rebuttable presumption, "the defendant is entitled to a jury instruction that the presumption does not relieve the State of its burden of proving guilt beyond a reasonable doubt." We do not interpret subsection (d) or the last sentence in subsection (e) as being designed to legally require any particular pro-State jury instruction. *See* footnote 4. Rather, they merely say that a reasonable inference may be drawn by the jury from particular basic facts in evidence even if the evidence is conflicting. That is entirely consistent with the jury's role.

Our conclusion in this regard is reinforced by two sources. The Commentary to the Code says the following about a "rebuttable presumption":

" . . . It gets the case to the jury without any further evidence bearing on the point. Thereafter it is treated like any other fact in the case. The jury may convict the defendant, in spite of evidence tending to rebut the presumption, if they find no reasonable doubt about the defendant's guilt. The notion of 'shifting' burdens is omitted."

*Delaware Criminal Code with Commentary* 65–66 (1973). Similarly, instruction 4H of the Delaware Criminal Code Pattern Jury Instructions (1974) makes it clear that a statutory rebuttable presumption is "nothing more than an inference [the jury is] permitted to make" and also makes it clear that "[t]he existence of a presumption does not relieve the State of its burden of proving its case beyond a reasonable doubt".

Thus, we do not find anything in the statute itself or in the inference it permits a jury to draw which is unconstitutional.

## II

The determination that the statute is not unconstitutional does not end the inquiry. The real thrust of the *Sandstrom* issue is how the case is put to the jury. As the Reporter's syllabus to the *Sandstrom* opinion says: "The effect of a presumption in a jury instruction is determined by the way in which a reasonable juror could have interpreted it, not by a state court's interpretation of its legal import." *Sandstrom*, 442 U.S. at 510, 99 S.Ct. at 2452. If a reasonable jury could interpret an instruction as creating a conclusive presumption or

---

4. The full section reads:

"§ 306. No conclusive presumptions; rebuttable presumptions and proof thereof.

(a) There are no conclusive presumptions in this Criminal Code, and all conclusive presumptions formerly existing in the criminal law of this State are hereby abolished.

(b) Rebuttable presumptions formerly existing in the criminal law of this State are preserved except to the extent that they are inconsistent with this Criminal Code.

(c) Notwithstanding any other provision of this Criminal Code, the following rebuttable presumptions are expressly preserved:

(1) A person is presumed to intend the natural and and probable consequences of his act.

(2) A person found in possession of goods acquired as a result of the commission of a recent crime is presumed to have committed the crime.

(d) Proof of a fact tending to create a rebuttable presumption not inconsistent with this Criminal Code or a presumption created by this Criminal Code constitutes prima facie evidence of the presumed conclusion.

(e) The court may tell the jury of the existence of the presumption, and if it does so the defendant is entitled to a jury instruction that the presumption does not relieve the State of its burden of proving guilt beyond a reasonable doubt. Nevertheless, the jury may convict the defendant, despite the existence of evidence tending to rebut the presumption, if they find no reasonable doubt about the defendant's guilt."

shifting the criminal burden of persuasion on a necessary element of the offense, then the instruction is constitutional error.[5]

■ The crucial portion of the charge for present purposes occurred after the instruction on the elements of the various degrees of homicide which had included a characterization of "intentionally" as being with "the defendant's conscious object or purpose to cause death". The Court then gave, in the following language, with emphasis added by us, a state of mind instruction and the conclusion of the charge:

"I have instructed you that an element of the offense of murder in the first degree is that the defendant acted intentionally. An element of both murder second degree and manslaughter is that the defendant acted recklessly. It is, of course, difficult to know what is going on in another person's mind. Therefore, our law permits the jury to draw an inference, or in other words to reach a conclusion, about the defendant's state of mind from the facts and circumstances surrounding the act the defendant is alleged to have done. In reaching this conclusion, you may consider whether a reasonable man in the defendant's circumstances would have had or lacked the requisite intention or recklessness. You should, however, keep in mind at all times that it is the defendant's state of mind which is at issue here, and in order to convict the defendant you are required to find beyond a reasonable doubt that he in fact had the intention or recklessness required for a finding of guilty.

*A person is presumed to intend the natural and probable consequences of his act.*

You must not base your verdict on sympathy for Brock M. Nefsey or for the defendant, or any member of their families, or on the possible consequences of a verdict.

Your duty is to render an impartial verdict based solely on the evidence and law.

Your verdict, whatever it may be, must be unanimous.

You may find one of the following verdicts:

1. Guilty as charged—that is, guilty of murder in the first degree;

2. Guilty of murder in the second degree;

3. Guilty of manslaughter;

4. Guilty of criminally negligent homicide;

5. Not guilty of any offense."

The State would have us read the sentence relating to the presumption in the context of the preceding paragraph. We do not think the language lends itself to that relationship. The prior paragraph is on state of mind generally and talks in terms of "inference". The presumption sentence is on intent only and is stated in terms of "presumed". Moreover, the isolation of this sentence at the end of the charge and without the bounds of the general discussion highlights the sentence before the jury. The sentence was isolated in form and substance.

The sentence standing alone is glaringly deficient. It appears unrelated to the statutory concept (see footnote 4), unrelated to the Delaware Criminal Code Pattern Jury Instruction, and unrelated to any direct link or even any general subsequent link to the State's continuing burden to prove its case beyond a reasonable doubt. In short, it is stuck on at the end of the charge in mandatory language without any reasonable qualifying context. In *Sandstrom* terms, a rea-

---

5. In this case, pursuant to Supreme Court Rule 8, we think the interests of justice require consideration of this issue on the merits even in the absence of a defense requested jury instruction and in the absence of an exception to the charge as given. See Superior Court Criminal Rule 30(a). The issue of intent rested on circumstantial evidence and, given the parent-child relationship, there is no real evidence of motive other than an annoyance inference. In short, there was a close factual question for the jury on the issue of intent. The closeness of the factual question plus the constitutional nature of the objection plus an apparent need for our trial judges to focus on the Sandstrom case lead us to a consideration of the merits.

sonable jury could have interpreted the instruction as creating a conclusive presumption or as altering the burden of proof. Since the instruction relates to intent, insofar as the conviction of Murder in the First Degree is concerned, reversal is required.

Since the jury necessarily determined that the defendant caused the infant's death, we have considered identifying the maximum benefit the defendant might gain by the instructional error. If we could do so, and the State agreed, we might be able to save a new trial by entering judgment to a lesser offense. *Oney v. State,* Del.Supr., 397 A.2d 1374, 1376 (1979); *Waters v. State,* Del.Supr., 443 A.2d 500, 506 (1982). Given the causation finding of the first jury and given the injuries, it seems certain the defendant is guilty of homicide in some degree. But the missing factor is state of mind. While we may have some idea of an offense which the evidence clearly supports, we think the concepts—such as recklessly manifesting a cruel, wicked and depraved indifference to human life (2nd degree murder), recklessness or intent to cause serious physical injury (manslaughter) and criminal negligence (criminally negligent homicide) —are peculiarly for the jury on the facts of this case. Accordingly, we are unable as a matter of law to choose the appropriate lesser included offense.

The judgment of the Superior Court is reversed and the case is remanded for a new trial.[6]

---

**6.** Given the disposition, we are not required to consider the third contention of the defendant concerning the necessity for instructions to a non-sequestered jury during the trial about me-

dia exposure. This is obviously an area for caution by trial judges, especially in cases of notoriety. See *Smith v. State,* Del.Supr., 317 A.2d 20, 23–24 (1974).