**Charles D. CRAIG, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 15, 1982.

Decided: Feb. 4, 1983.

John Williams (argued) of Prickett, Jones, Elliott, Kristol & Schnee, Dover, for defendant-appellant.

Gary A. Myers (argued), Deputy Atty. Gen., Georgetown, and James Liguori, Deputy Atty. Gen., Dover, for plaintiff-appellee.

Before HERRMANN, C.J., McNEILLY and QUILLEN, JJ.

QUILLEN, Justice:

The defendant, Charles Dale Craig, was convicted of robbery in the first degree, possession of a deadly weapon during the commission of a felony, and conspiracy in the second degree. These offenses arose as a result of a bank robbery at the Canterbury branch of the First National Bank of Harrington on December 12, 1980. Craig was also convicted in the same trial of felony theft as the result of a car theft which occurred on or about December 4, 1980. Craig was tried with a co-defendant, one Ronald Johnson, who was also convicted of the same four felonies and whose case is also undergoing postconviction review.

The facts are not in material dispute and we state them with heavy reliance on the briefs.

On December 12, 1980, around three o'clock in the afternoon, three white men, wearing ski masks and carrying shotguns, entered the Canterbury branch of the First National Bank of Harrington. While one robber, armed with a shotgun, stood by the door, the two others hurdled the counter and emptied the tellers' drawers, stuffing their contents into a bag. Part of the money going into the bag was the bank's "bait money", twenty twenty dollar bills which had had their serial numbers previously recorded. The taking of the "bait money" from the tellers' drawers activated the bank's surveillance camera. The robber guarding the door shot out the camera. That shotgun blast effectively precluded the recovery of any photographs. After the other two had emptied the drawers of approximately $14,000.00, the three robbers ran to a metallic gold and black automobile parked outside and fled.

Although obviously shaken during the encounter, the assistant bank manager and the tellers were able to give descriptions of the robbers' physical characteristics and their clothing. The manager paid particular attention to the robber stationed at the door, watching him practically the whole time. Although his face was covered by a ski mask, the manager could observe blond hair. Moreover, she was struck by his bright blue eyes. At trial, she identified the defendant Craig as having blue eyes similar to the robber who shot the surveillance camera.

The getaway car, a 1975 Dodge Colt, generally identified by witnesses, was found within an hour abandoned about three miles west of the bank. It had been stolen from a Dover bar the night of December 3, 1980.

The break in the investigation came on January 2, 1981, when the defendant Craig was arrested for two minor traffic violations and required to post $400.00 secured

bond at the local justice of the peace court. Craig tendered as bond twenty twenty dollar bills drawn from a large amount of money. The court bailiff, having previously received a list of the serial numbers from the bank's "bait money", compared the bills given to him by Craig to the listing. He found four of the bills matched the "bait money" list. The police were alerted and they took Craig into custody, but only after they had discovered that he had secreted another twenty dollar "bait" bill in the magistrate court's bathroom. Craig indicated to the police that he obtained the money as a payoff in a "dope" deal. Further police investigation revealed that on the night of the bank robbery, Craig had obtained some marijuana and, accompanied by two other individuals, had driven to Fayetteville, North Carolina. While in Fayetteville, Craig purchased a car stereo costing $164. Craig paid for the stereo with a one hundred dollar bill and several twenty dollar bills which he drew from a stack of bills 2" to 3" thick.

The second break in solving the bank robbery came later in April, 1981, when various members of the Johnson family, as a result of a family disagreement, gave several statements to the police. The statements, made by Donald Johnson, the father, and his two sons, Ricky and Brett, implicated Ronald Johnson in the robbery. Both the father, Donald Johnson, and a brother, Ricky Johnson, indicated that Ronald Johnson had made verbal and non-verbal admissions of his involvement in the bank robbery. Ricky Johnson indicated that Craig and Ronald Johnson had had discussions with their friends for purposes of coordinating their alibi. Ricky Johnson also indicated that he had observed the black and gold getaway car near Ronald Johnson's home a week before the robbery and that Ronald Johnson had been at the bar where it was stolen the night it was reported missing. Another Johnson brother, Brett, also associated the car with his brother and told of an incident occurring a week after Craig's arrest, when he accompanied Craig to a woods and watched as Craig dug up a bag full of money.

The incriminating testimony of Donald Johnson and his two sons, Ricky and Brett, was contradicted on various issues by numerous defense witnesses. In essence, the defense was alibi, a defense rejected by the jury.

Eight separate grounds were initially urged by the defendant on appeal. It should be noted that counsel for the defendant on appeal did not participate in the trial. Many of the items now contended to be reversible error were not raised in the Superior Court. A ninth issue arose during the first oral argument of the case and it was the subject of a supplemental briefing and further oral argument. We consider each of the arguments as well as the State's concession that there was not sufficient evidence to convict Craig of felony theft of the automobile.

■ First, the defendant objects to the failure of the Superior Court to order separate trials. It appears, however, that the co-defendant Johnson made a motion for a severance. The defendant in this appeal made no such motion and took no position on his co-defendant's motion. Nor was any application made by this defendant during the course of the trial. The defendant now claims personal prejudice because certain admissions by the co-defendant to members of the co-defendant's family as to the bank robbery were presented in evidence. Since the severance question was not fairly presented by the defendant to the Trial Court, it cannot be presented for review on appeal. Supreme Court Rule 8. We simply cannot permit a defendant to reverse trial tactics after a losing verdict. There is no error.

■ Second, the defendant claims the Trial Judge abused his discretion in not allowing each defendant six peremptory challenges. The rule, Superior Court Criminal Rule 24(b) provides that "defendants shall be entitled to a total of 6 peremptory challenges" but "the Court may allow the defendants additional peremptory chal-

lenges". In fact, the Court here exercised its discretion in the defendants' favor and allowed them eight peremptory challenges, four each. There was no abuse of discretion. *Hickman v. State,* Del.Supr., 431 A.2d 1249, 1250–51 (1981).

■ As to the third contention, the failure to ask the jury panel if any member had ever been the victim of a crime, it appears the question was not proposed in the defendant's revised list of requested *voir dire* questions. Thus, there was no error.

Fourth, it is contended that the jury charge in relation to the possession of recently stolen goods violated the defendant's constitutional protection against self-incrimination and was not warranted by the facts. Since our revised code, the charge has had a statutory base, 11 *Del.C.* § 306(c)(2). Section 306 reads:

"§ 306. No conclusive presumptions; rebuttable presumptions and proof thereof.

(a) There are no conclusive presumptions in this Criminal Code, and all conclusive presumptions formerly existing in the criminal law of this State are hereby abolished.

(b) Rebuttable presumptions formerly existing in the criminal law of this State are preserved except to the extent that they are inconsistent with this Criminal Code.

(c) Notwithstanding any other provision of this Criminal Code, the following rebuttable presumptions are expressly preserved:

(1) A person is presumed to intend the natural and probable consequences of his act.

(2) A person found in possession of goods acquired as a result of the commission of a recent crime is presumed to have committed the crime.

(d) Proof of a fact tending to create a rebuttable presumption not inconsistent with this Criminal Code or a presumption created by this Criminal Code constitutes prima facie evidence of the presumed conclusion.

(e) The court may tell the jury of the existence of the presumption, and if it does so the defendant is entitled to a jury instruction that the presumption does not relieve the State of its burden of proving guilt beyond a reasonable doubt. Nevertheless, the jury may convict the defendant, despite the existence of evidence tending to rebut the presumption, if they find no reasonable doubt about the defendant's guilt."

Pursuant to the statute, the Court instructed the jury on the "rebuttable presumption" as well as the effect of the defendants not taking the witness stand and the defense of alibi. This portion of the charge read as follows:

"The defendants in this case did not take the stand and testify. They are not required to do so. The jury cannot draw any inference concerning their guilt or innocence from this fact.

Under Delaware law there is a rebuttal presumption that a person who is in possession of goods acquired as a result of a commission of a recent crime is presumed to have committed the crime. This presumption does not relieve the State of its burden of proving guilt beyond a reasonable doubt. That is rebuttable presumption so that if the possession of the goods is explained to the satisfaction of the jury the presumption would be completely destroyed. You will note that the presumption refers to a recent crime. The lapse of time between the commission of the crime and the discovery of the goods in one's possession is a fact to be considered by the jury in deciding whether or not to apply the presumption or to disregard it.

Despite the existence of evidence tending to rebut the presumption a jury may convict the defendant if they find no reasonable doubt of the defendant's guilt.

The defense in this case is what in law is known as alibi. The defense is a recog-

nized defense under our law. The defendants contend they were somewhere other than at the place where the crime was have to be committed when it was alleged to have been committed.

The evidence on this point raises in your mind a reasonable doubt as to either of the defendant's guilt you must give him the benefit of that doubt and return a verdict of not guilty.

These defendants just like every defendant brought to trial in a criminal case in this State are presumed to be innocent until their guilt has been proved to your satisfaction beyond a reasonable doubt. The burden of proving the guilt of the defendants is upon the State. The State is not required to prove their guilt to an absolute or mathematical certainty.

By reasonable doubt we do not mean a vague, speculative, whimsical or a mere possible doubt. It is a substantial doubt. Such a doubt as men and women like yourselves may honestly entertain after a consideration of all the evidence in the case."

■ We find no merit to alleged constitutional violation of the right of self-incrimination. The defendant through independent witnesses raised the alibi defense so the rebuttal language did not suggest a requirement of his testimony. The alibi instruction makes it clear that the State must prove presence beyond a reasonable doubt. The jury was specifically charged that no inference concerning guilt or innocence could be drawn from the failure of the defendant to testify. The extra specific instruction, as part of rebuttable presumption instruction, on the State's burden of proof also indicates no compulsory self-incrimination. There was no prejudice to the defendant's right to remain silent. The constitutional argument based on the privilege of self-incrimination is without merit. Barnes v. United States, 412 U.S. 837, 846–47, 93 S.Ct. 2357, 2363, 37 L.Ed.2d 380 (1973).

Factually, it appears that the defendant was in possession of marked "bait money" some three weeks after the bank robbery. Defendant argues that the time lapse, the fungible nature of money and the fact that the defendant told the police the money came from a drug sale make the charge relating to the possession of recently stolen goods inappropriate. We think the issue was properly submitted to the jury to weigh the factual contentions of the parties. See Barnes, 412 U.S. at 840 n. 3, 845 n. 9, 93 S.Ct. at 2360 n. 3, 2362–63 n. 9. The factual situation, the nature of "bait money" and its use some three weeks after the robbery, justified the charge.

At the first oral argument, however, there was raised another "rebuttable presumption" problem which stems from the United States Supreme Court's decision in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). This new issue is related to the fourth original contention and we turn to it now. The Sandstrom decision raises a constitutional flag about the role of presumptions in criminal cases.

■ It is clear that a mandatory or conclusive presumption, that is, a presumption which makes it mandatory on the jury to find the presumed fact from the proven fact, constitutionally invades the province of the jury. Such a presumption, when the presumed fact is a necessary element of a criminal offense, amounts to an erroneous rule of law and improperly relieves the State of its burden of proof. Sandstrom, 442 U.S. at 521–23, 99 S.Ct. at 2458–59; In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).

■ It is now equally clear under Sandstrom that "[a] presumption which, although not conclusive, [has] the effect of shifting the burden of persuasion to the defendant ... [suffers] from similar infirmities." Sandstrom, 442 U.S. at 524, 99 S.Ct. at 2459. On the other hand, if "the instruction merely described a permissive

inference—that is, it allowed but did not require the jury to draw conclusions ..." [*Sandstrom,* 442 U.S. at 514, 99 S.Ct. at 2454] and did not shift the burden of persuasion, "it could not conceivably have run afoul of the constitutional decisions" [*Sandstrom,* Justice Rehnquist concurring, 442 U.S. at 527, 99 S.Ct. at 2461]. This due process *Sandstrom* issue was not raised at trial. As noted above, it was raised during the first oral argument in this Court and became the subject of supplemental briefing and a second oral argument in this appeal.

The new issue raises three separate questions. What is the effect of the failure of the defense to raise expressly the *Sandstrom* due process issue at trial? What is the effect of *Sandstrom* on the Delaware statute, 11 *Del.C.* § 306(c)(2)? What is the effect of *Sandstrom* on the particular instruction given in this case?

■ The first question is more elusive than appears at first blush. While no objection was ever raised specifically in *Sandstrom* due process terms, counsel on appeal have supplemented the record to show a defense proffered "inference from possession of recently stolen property" instruction. That instruction was in terms of "inference" not "presumption" and included express language to indicate that possession of recently stolen property "does not shift the burden of proof" which "is always upon

the State to prove beyond a reasonable doubt every essential element of an offense". While the proffered instruction contained some language which might be unduly pro-defense, that is hardly unusual. To a significant extent, the issue on which we are now focusing was inferentially brought to the Trial Judge's attention in the proffered instruction. The issue is also closely related to the self-incrimination argument. Moreover, the issue of the effect of presumptions, while not easy and while perhaps more semantics than substance in most cases, is hardly new. *See Flamer v. State,* Del.Supr., 227 A.2d 123, 126 n. 1 (1967). Given the proffered instruction, and the diligent attention that should be paid to such proffers on an individual case basis, we cannot say the matter was "not brought to the attention of the Court." Superior Court Criminal Rule 52(b). Thus, the instruction ultimately given should not gain the increased insulation of the "plain error" rule.[1]

■ We thus turn to the merits of the *Sandstrom* objection. With regard to the second question raised on the *Sandstrom* issue, for the reasons given in *Plass v. State,* Del.Supr., 457 A.2d 362 (1983), we do not think our statute is unconstitutional. In general, the statutory phrase "rebuttable presumption" as it relates to the possession of recently stolen goods authorizes only a permissible inference which does not shift and alter the degree of the normal criminal

---

1. This conclusion is highlighted by the exchange at the conclusion of the jury charge:

"THE COURT: Now, I understand the defendants objected to my charge on presumption of recently stolen goods. That exception is preserved. [Craig's counsel] handed me a proposed charge this morning with something different than what I gave. His proposed charge is in the file so it can be compared, if necessary to do so, on appeal.

Are there any other exceptions?

[DEPUTY ATTORNEY GENERAL]: Nothing from the State.

[JOHNSON'S COUNSEL]: Not from defendant Johnson, Your Honor.

[CRAIG'S COUNSEL]: Your Honor is correct. I would wish to make it absolutely clear

on the record I am objecting and [not] only to failure to give the instruction as tendered to the Court but the giving of the instruction at all.

THE COURT: No other exception?

[CRAIG'S COUNSEL]: No, Your Honor. It is my position that that presumption is violative of the constitutional rights of the defendant Dale Craig.

THE COURT: The record will show the jury has now retired to consider the verdict.

We will recess until the call of the Court." Thus, an objection to the charge in the form of a defense request was preserved even though the constitutional reference evidently goes to self-incrimination not *Sandstrom* due process.

burden of proof. This was recognized at the outset in the Commentary to the Code. *Delaware Criminal Code with Commentary* 65–66 (1973). We do not interpret the statute as requiring any particular jury instruction other than emphasizing that the burden of proving guilt beyond a reasonable doubt remains on the State.[2]

Turning to the particular instruction in this case, we do not find it to be erroneous in the context of the evidence in this case. There is no doubt in this case that an armed robbery with three participants occurred. As to the defendant Craig, there was a great deal of evidence, recited *supra*, beyond Craig's possession of the "bait money". Although Craig did not testify, an alibi defense was presented and thus there was direct defense rebuttal to the permissive inference. Additionally, Craig's out-of-court explanation for possessing the money was before the jury. It is true that the charge was not the pattern charge and was given solely in terms of presumption. But it was made expressly clear in the presumption charge itself that "the burden of proving guilt beyond a reasonable doubt" remained on the State. The charge left no doubt that the defendant had no burden to testify. Both the alibi charge and the normal reasonable doubt charge immediately followed the presumption charge and both emphasized the proper criminal burden of proof.

In *Sandstrom* terms, there is no real contention that the presumption here could have been reasonably construed as conclusive. The question raised here is whether a reasonable juror could have interpreted the instruction as shifting the criminal burden of persuasion on a necessary element of the offense. For the reasons noted above, we are satisfied that a fair reading of this jury

charge as it relates to the evidence in this case precludes that interpretation.

Returning to the original eight contentions, the fifth contention of the defense is that certain disparaging remarks made by the Trial Judge to defense counsel in the presence of the jury denied the defendant his constitutional right to effective assistance of counsel. The defense cites nine separate instances, none of which gave rise to an objection or a mistrial motion. While some of these remarks displayed poor judicial demeanor, being sarcastic in tone and impatient in manner, the remarks generally had some merit in content. If the impact had been as severe as now claimed, the Trial Judge's attention should have been directed to such impact. While we admonish the Trial Judge, we do not find that the remarks were prejudicial to the defense case and certainly they did not amount to "plain error". The matter simply was not fairly presented to the Trial Court and therefore is not a proper subject of review. Supreme Court Rule 8.

Similarly, the sixth appellate objection goes to certain comments of the prosecutor in argument when no contemporaneous objection was made at trial. The defense cannot now present a proper issue for review. Controlling the latitude of argument is always a difficult chore requiring on the spot discretionary judgment which can readily cure comments deemed beyond proper limits. Absent flagrant abuse, there is special need for prompt objection. There is no ground for reversal here.

As to the seventh contention, while it may have been better to expressly tell the jury they should consider the evidence against each defendant separately, there

---

**2.** Since instruction 4H of the Delaware Pattern Jury Instructions starts out by stating that a "presumption is nothing more than an inference", the Superior Court might want to rework the language exclusively into language of inference. We do not mean to suggest that any

standard instruction can satisfy every situation. But the intellectual exercise and analysis that goes into pattern instructions is frequently helpful in highlighting legal problems. Given *Sandstrom* and other cases, it is a good time to review the pattern instruction 4H.

was no request for such a charge, there was no objection to the charge as given, and the jury was charged to "return four separate verdicts against each defendant." The charge ended: "Four separate verdicts against each as to each defendant and each verdict must be unanimous." We do not believe the issue was properly preserved and in no event can it be a ground for reversal.

■ Finally, reversible error is alleged because a "mug shot" of the defendant, shown to a witness but never presented in evidence, was accidently dropped on the floor in the presence of the jury and there remained face-up for twenty minutes before it was discovered and retrieved by defense counsel. The Trial Judge, based on his ruling at trial and on the motion for a new trial, did not believe any juror saw it and obviously felt the whole incident *de minimis* and harmless in any event. We have no reason to disagree.

■ The State in its supplemental memorandum has conceded that it failed to present sufficient evidence to permit the jury to find the defendant Craig guilty beyond a reasonable doubt on the charge of felony theft of the automobile used in the bank robbery. We agree. As to the charge of felony theft only, the judgment of the Superior Court is reversed, the sentence vacated and a judgment of acquittal directed. As to the other three charges, the judgment of the Superior Court is affirmed.