ALASKA ELECTRICAL PENSION, FUND, Plaintiff Intervenor, Below Appellant,

v.

Stephen L. BROWN, Crady Family Trust, Michael Crady, Plaintiffs Below, Appellees,

and

Lyon Homes, Inc., General William Lyon, William H. Lyon, Harold H. Greene, Arthur B. Laffer, and Lawrence M. Higby, James E. Dalton, Richard E. Frankel, Gary H. Hunt, and Alex Meruelo, Defendants Below, Appellees.

No. 240,2009.

Supreme Court of Delaware.

Submitted: Oct. 14, 2009.

Decided: Jan. 14, 2010.

**414**

R. Bruce McNew, Esquire of Taylor & McNew LLP, Wilmington, DE; Of Counsel: Randall J. Baron, Esquire (argued) and Kevin K. Green, Esquire of Coughlin, Stoia, Geller, Rudman & Robbins LLP, San Diego, CA for appellant.

Carmella P. Keener, Esquire of Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; Pamela S. Tikellis, Esquire and Scott M. Tucker, Esquire of Chimicles & Tikellis, LLP, Wilmington, DE; Of Counsel: Carl L. Stine, Esquire (argued) of Wolf Popper LLP, New York, NY; Barroway Topaz Kessler Meltzer & Check, LLP, Radnor, PA; for appellees Stephen L. Brown, Crady Family Trust and Michael Crady.

Catherine G. Dearlove, Esquire, Ethan A. Shaner, Esquire, and Thomas A. Uebler, Esquire of Richards, Layton & Finger, P.A., Wilmington, DE; S. Mark Hurd, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, DE; David C. McBride, Esquire and Danielle Gibbs, Esquire of Young, Conaway, Stargatt & Taylor, LLP of Wilmington, DE: Of Counsel: Michael G. Yoder, Esquire (argued) of O'Melveny & Myers LLP, Newport Beach, CA; for appellees General William Lyon and William H. Lyon.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice.

This action originated with a tender offer by General William Lyon ("Lyon") of $93 per share for the outstanding shares of Lyon Homes, Inc., a Delaware corporation.

On the same day the tender offer was announced, Plaintiff Intervenor–Appellant Alaska Electrical Pension Fund ("Alaska") filed a class action suit in the Superior Court of California. Two days later, individual stockholders filed two separate class actions in the Delaware Court of Chancery. All three suits alleged similar breaches of fiduciary duty and disclosure claims relating to the tender offer. Lyon and the other Defendants [1] reached an initial settlement with the Delaware Plaintiffs, agreeing to, *inter alia,* increase the offer price from $93 to $100. Alaska refused to join in the initial settlement. The tender offer was eventually increased by Lyon to $109 per share. Alaska filed a motion to intervene in the Delaware action to recover its attorneys' fees and costs. The Court of Chancery refused to award Alaska any fees after finding "that Defendants and the Delaware Plaintiffs have rebutted the presumption that Alaska and its attorneys were a cause of the second price increase. Alaska and its attorneys did not in any way contribute to the higher price."

Alaska makes two arguments on appeal. First, it contends that the Defendants did not rebut the presumption of causation in its favor which we previously held to apply in this case.[2] Specifically, we held it is Defendants' "burden to establish that the pending Alaska lawsuit did not in anyway contribute" to the second price increase.[3] Alaska argues it is entitled to an award of attorneys' fees and costs because the Court of Chancery erroneously applied this demanding standard. Second, and in

---

1. The Defendant–Appellees are Lyon Homes, Inc., Lyon, William H. Lyon, Harold H. Greene, Arthur B. Laffer, Lawrence H. Higby, James E. Dalton, Richard E. Frankel, Gary H. Hunt and Alex Meruelo (collectively the "Defendants").

2. *Alaska Electrical Pension Fund v. Brown,* 941 A.2d 1011 (Del.2007).

3. *Id.* at 1016.

the alternative, it contends the Court of Chancery erred in permitting the Defendants to shield three emails from discovery under the attorney-client privilege. We conclude that the Court of Chancery applied the proper legal precepts in placing the burden on the Defendants to demonstrate that Alaska was in no way a cause of the tender offer increase. Although the presumption of causation is a demanding one, it is rebuttable. Because the record supports the Vice Chancellor's finding that Defendants carried their burden of proof, the Court of Chancery did not abuse its discretion in denying Alaska's application for attorneys' fees and costs. We also find no abuse of discretion by the Vice Chancellor in denying Alaska's motion to compel discovery. Accordingly, we affirm.

### Facts and Procedural History

Lyon Homes is a Delaware corporation, headquartered in California, that designs, builds and sells single family homes. Before the tender offer that precipitated this litigation, Lyon was Lyon Homes' Chairman, Chief Executive Officer and largest stockholder. Lyon owned approximately 48% of the company's stock and controlled slightly more than half of its voting power. On March 17, 2006, Lyon announced a tender offer to acquire the remaining stock for $93 per share.

The same day that the tender offer was announced, Alaska, a Lyon Homes stockholder, filed a complaint in the Superior Court of California. A few days later, individual stockholders filed two separate lawsuits in the Delaware Court of Chancery. The three actions purported to be class actions brought on behalf of all Lyons Homes public stockholders, alleging similar breaches of fiduciary duty and disclosure claims relating to the tender offer. The Court of Chancery consolidated the two Delaware actions and granted expedited discovery. After Alaska moved for ex-

pedited discovery in the California action, the California Superior Court directed Alaska to coordinate its discovery with that being conducted by the Delaware plaintiffs.

On April 10, 2006, the Delaware plaintiffs entered into a memorandum of understanding with Lyon and the other defendants (the "Original Settlement"), agreeing, *inter alia*, to increase the offer price from $93 to $100 per share and to provide additional disclosures. Lyon also agreed not to oppose an attorneys' fee award of up to $1.2 million and the Delaware plaintiffs agreed not to seek more than that amount.

Despite an invitation from the parties to the Memorandum, Alaska declined to join the Original Settlement. Alaska participated in the confirmatory discovery conducted by the Delaware plaintiffs, and on April 20, 2006, sought a temporary restraining order in California to prevent consummation of the tender offer. The California Superior Court denied Alaska's motion.

Between April 24 and April 28, 2006, a major stockholder of Lyon Homes, Chesapeake Partners Limited Partnership ("Chesapeake"), began discussions with Lyon about the tender offer price. Chesapeake's participation in the tender offer was important to Lyon because without Chesapeake, he would be unable to acquire 90% of the outstanding stock to complete a short-form merger. At some point during those negotiations, Chesapeake contacted Alaska to determine its position. Alaska told Chesapeake that the revised offer price of $100 per share was too low and that a fair price would be between $108 and $126 per share. Subsequently, Chesapeake agreed with Lyon to tender its shares at $109 per share, which became the final tender offer price.

On June 19, 2006, after the tender offer was completed, the parties to the Delaware action filed a stipulation of settlement (the "Final Settlement"). Before the Final Settlement hearing, Delaware plaintiffs requested an award of the agreed upon $1.2 million in attorneys' fees, based solely on the disclosures obtained and the price increase from $93 to $100. On July 28, 2006, Alaska moved to intervene in the Delaware action for the purpose of presenting its own fee application. Alaska requested 66% of any fee ultimately awarded, on the theory that it was 50% responsible for the price increase to $100, 50% responsible for the additional disclosures, and 100% responsible for the price increase to $109. The Court of Chancery approved the Final Settlement, awarded $1.2 million to the Delaware plaintiffs, and denied Alaska's fee request.

Alaska appealed to this Court the denial of its attorneys' fees request, arguing that it was entitled to a presumption that its litigation contributed to the beneficial outcome achieved for the class. We held that "the Court of Chancery acted well within its discretion in concluding that Alaska was not entitled to any fees with respect to the Original Settlement," but that Alaska was entitled to a presumption of causation related to the subsequent increase from $100 per share to $109 per share, which it was not afforded by the Court of Chancery.[4] We remanded for further proceedings.[5]

On remand, the parties conducted additional discovery, including document production, interrogatories, and depositions.

Following the completion of document discovery but before the post-remand depositions, Alaska moved to compel the production of three emails that Defendants withheld, citing the attorney-client privilege. The Court of Chancery denied Alaska's motion to compel, holding that although the emails may be discoverable, examination of the emails was not yet required because "Alaska had an upcoming opportunity to depose the Lyon Defendants and their defense counsel." Following this ruling, the depositions were taken.

General Lyon testified at his deposition that his "solitary goal ... was to obtain enough shares to satisfy the Majority of the Minority condition and complete [the] Tender Offer. Accomplishment of that goal had nothing to do with Alaska's counsel or the California Action."[6] General Lyon and his son, William H. Lyon, asserted the attorney-client privilege when questioned regarding communications with their counsel leading up to the price increase. Alaska neither renewed its motion to compel the emails nor did it otherwise seek the intervention of the Court of Chancery to overrule the Lyon Defendants' privilege objections.[7] Discovery was completed and a hearing was held on Alaska's motion for attorneys' fees and costs.

The Vice Chancellor found "that Defendants and the Delaware Plaintiffs have rebutted the presumption that Alaska and its attorneys were a cause of the second price increase. Alaska and its attorneys did not in any way contribute to the higher price."[8] Regarding Alaska's allegations of

4. *Alaska Electrical Pension Fund v. Brown,* 941 A.2d at 1016.

5. *Id.* at 1017.

6. *In re William Lyon Homes Shareholder Litigation,* 2009 WL 1019738, at *2 n. 12 (Del.Ch. April 2, 2009).

7. *Id.* at *4.

8. *Id.*

discovery violations, the Vice Chancellor held that "if there was a problem with the discovery, the appropriate course would have been to seek the Court's assistance in resolving it."[9] The Court of Chancery denied Alaska's application for attorneys' fees and costs and this appeal followed.

### The Court of Chancery did not abuse its discretion in denying Alaska's request for attorneys' fees and costs.

Causation is the central dispute of fact in this case. Alaska contends it is entitled to attorney's fees and costs as a result of the second price increase in Lyon's tender offer from $100 per share to $109 per share because Defendants failed to rebut the presumption to which it was entitled under our prior holding. Alaska argues that the Court of Chancery abused its discretion when it held that the Defendants established that Alaska did not in any way contribute to the higher price. We review a denial of an application for attorneys' fees and costs for abuse of discretion, but we review *de novo* the legal principles applied in reaching that decision.[10]

Delaware generally follows the American Rule, under which litigants are responsible for their own attorneys' fees, regardless of the outcome of the lawsuit.[11] Delaware courts have long-recognized the "common corporate benefit" doctrine as an exception to the American Rule to provide for the reimbursement of attorneys' fees and expenses in corporate litigation.[12] In order to be entitled to an award of fees under the corporate benefit doctrine, an applicant must show, as a preliminary matter, that: (i) the suit was meritorious when filed; (ii) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (iii) the resulting corporate benefit was causally related to the lawsuit.[13] "This rule insures that, even without a favorable adjudication, counsel will be compensated for the beneficial results they produced ..."[14]

Where, as here, a defendant takes action subsequent to the complaint that renders the claims asserted moot, Delaware law imposes on the defendant the burden to show that no causal connection existed between the initiation of the suit and any later benefit to the shareholders.[15] This presumption exists because it is the "defendant, and not the plaintiff, who is in a position to know the reasons, events and decisions leading up to the defendant's action."[16]

Under Delaware law, two types of presumptions exist. Conclusive presumptions mandate that the trier of fact "find the presumed fact from the proven fact."[17] A rebuttable presumption, howev-

**9.** *Id.*

**10.** *Alaska Electrical Pension Fund v. Brown,* 941 A.2d at 1015 (citing *Dover Historical Soc. Inc. v. City of Dover Planning Comm'n,* 902 A.2d 1084, 1089 (Del.2006)).

**11.** *Goodrich v. E.F. Hutton Group, Inc.,* 681 A.2d 1039, 1044 (Del.1996).

**12.** *Id.*

**13.** *Allied Artists Pictures Corp. v. Baron,* 413 A.2d 876, 878 (Del.1980).

**14.** *Id.*

**15.** *Tandycrafts, Inc., v. Initio Partners,* 562 A.2d 1162, 1167 (Del.1989); *Allied Artists,* 413 A.2d at 880.

**16.** *Allied Artists,* 413 A.2d at 880.

**17.** *Craig v. State,* 457 A.2d 755, 760 (Del. 1983). *See, e.g. Beggs v. Wilson,* 272 A.2d 713, 714 (Del.1970) (holding "there is some age level below which there is a conclusive presumption that the child is incapable of negligent conduct").

er, "imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." [18] Although the presumption of causation is demanding, it is rebuttable. Therefore, to overcome this presumption, the Defendants must demonstrate that the lawsuit "did not in any way cause their action." [19]

The Court of Chancery applied the proper legal precepts on remand by beginning with the premise that "unless and until proven otherwise, Alaska's efforts are presumed to be a cause of the second increase." [20] The Court of Chancery began its analysis by recognizing that "[e]ven though Alaska has conceded it was not a direct cause of the second increase, the burden, nevertheless, is on the Defendants ... to demonstrate that Alaska was not a cause in any way, even indirectly, of the second increase." [21] Defendants presented such proof.

In his deposition after remand, General Lyon testified that his "solitary goal ... was to obtain enough shares to satisfy the Majority of the Minority condition and complete [the] Tender Offer. Accomplishment of that goal had nothing to do with Alaska's counsel or the California Action." [22] Alaska argues that the evidence still fails to establish that the Defendants met their burden because of Alaska's documented consultation with Chesapeake about stock values during the negotiations. But after weighing the evidence, the Court of Chancery determined that Alaska's counsel's opinions were of no significance to Chesapeake. "Mr. Long testified that Chesapeake's view of the proper valuation of Lyon Homes was based on its own analysis, and that he did not rely upon someone else's analysis." [23] Alaska points to a contemporaneous memorandum written by Mr. Robbins, attorney for Alaska, following a conversation with Mr. Long, as evidence that Alaska's valuation of the stock aided Chesapeake in reaching its ultimate conclusion that $100 per share was insufficient. The Court of Chancery was not persuaded by this evidence because "Mr. Long already recognized that the $100 per share was insufficient prior to any contact with Alaska's counsel." [24] The Vice Chancellor found as a fact that "Alaska and its attorneys did not in any way contribute to the higher price." [25]

 This finding is entitled to deference. "So long as the Court of Chancery has committed no legal error, its factual findings will not be set aside on appeal unless they are clearly wrong and the doing of justice requires their overturn." [26]

**18.** D.R.E. 301(a).

**19.** *Allied Artists,* 413 A.2d at 880. Delaware law does not embrace the "bursting bubble" rule adopted by the Federal Rules of Evidence, which requires only that the opposing party produce some evidence to rebut the presumption. *See Staats v. Lawrence,* 1990 WL 168242, at *2 (Del. Oct.3, 1990)(TABLE). *See also Usery v. Turner,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Oberly v. Howard Hughes Med. Inst.,* 472 A.2d 366, 388 (Del.Ch.1984).

**20.** *In re William Lyon Homes Shareholder Litigation,* 2009 WL 1019738, at * 1.

**21.** *Id.*

**22.** *In re William Lyon Homes Shareholder Litigation,* 2009 WL 1019738 at *2 n. 12.

**23.** *Id.* at *3.

**24.** *Id.* The Court of Chancery cited to Mr. Robbins' Memo of April 26, 2006 which notes "Mr. Long expressed his view that the price was unfair and wished to know what our clients were doing *vis-à-vis* the Tender Offer."

**25.** *Id.*

**26.** *Montgomery Cellular Holding Co., Inc. v. Dobler,* 880 A.2d 206, 219 (Del.2005) (citing *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del. 1972); *Harris v. State,* 305 A.2d 318, 319

Given the evidence presented, we find firm support in the record for the Court of Chancery's finding that Alaska and its attorneys did not contribute to the price increase. Since the presumption of causation was rebutted by factual findings supported by the record, the Court of Chancery did not abuse its discretion in denying Alaska's application for attorneys' fees and costs.

### The Court of Chancery did not abuse its discretion in denying discovery of the three emails.

Alaska also contends that the Court of Chancery abused its discretion in denying Alaska's motion to compel production of three disputed emails because they were discoverable under the "at issue" exception to the attorney-client privilege. We review the Court of Chancery's discovery rulings for abuse of discretion.[27]

Generally, the "attorney-client privilege generally protects the communications between a client and an attorney acting in his professional capacity . . ."[28] This privilege, however, can be waived when a party places an otherwise privileged communication "at issue" in the litigation.[29] In determining whether this exception applies, the court must consider whether "(1) a party injects the privileged communications themselves into the litigation, or (2) a party injects an issue into the litigation, the truthful resolution of which requires an examination of confidential communications."[30]

The Court of Chancery held that the Lyon Defendants had not implicated prong one of this test, as the Lyon Defendants "adopted a particular tactic and strategy— exclusive reliance on objective, non-privileged facts—in their challenge to Alaska's presumption of causation in order to avoid placing directly 'at issue' any advice they may have received from their attorneys regarding the California Action."[31]

Regarding the second prong, the Court of Chancery held that "the issue of whether or not the Lyon Defendants were in any way induced by the pendency of the California Action is an issue which must be deemed to have been injected by them into this litigation."[32] Although the Court of Chancery recognized that examinations of the communications would "undoubtedly be helpful," it concluded at the time of its ruling that "access to such communications cannot be said to be 'required' in order to achieve a 'truthful resolution' of the factors motivating them to increase their offer."[33]

Application of the at-issue exception is a fact-specific inquiry. The Court of Chancery did not abuse its discretion in denying Alaska's motion to compel discovery. The Vice Chancellor expressly noted that the deposition of the Lyon Defendants and their counsel had yet to be taken. A

---

(Del.1973); *Cede & Co. v. Technicolor, Inc.,* 884 A.2d 26, 2005 WL 1950280 (Del. May 4, 2005)).

**27.** *Coleman v. PricewaterhouseCoopers, LLC,* 902 A.2d 1102, 1106 (Del.2006).

**28.** *Moyer v. Moyer,* 602 A.2d 68, 72 (Del. 1992).

**29.** *Tackett v. State Farm Fire & Ca. Ins. Co.,* 653 A.2d 254 (Del.1995).

**30.** *Id.* (citing Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Prac-*

*tice in the Delaware Court of Chancery* § 7.02[c][2], at 7–28 (2008)). *See also Baxter Intern., Inc. v. Rhone–Poulenc Rorer, Inc.,* 2004 WL 2158051, at *3 (Del.Ch. Sept.17, 2004).

**31.** *In re William Lyon Homes Shareholder Litigation,* 2008 WL 3522437, *3.

**32.** *Id.* at 4.

**33.** *Id.*

more developed factual record would have assisted the trial court in making the fact-specific inquiry for the application of any exception. To the extent Alaska claims the depositions supported the discovery of privileged communications for the truthful resolution of any issue, that claim was not fairly presented below. No application was made to the Court of Chancery for relief either during or after these depositions. Accordingly, consideration of Alaska's claim is precluded under Supreme Court Rule 8.[34]

### Conclusion

The judgment of the Court of Chancery is **AFFIRMED.**

---

34. "Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented." Supr. Ct. R. 8.