# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| STANFORD FOWLER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N19A-08-002 DCS |
| | ) | |
| PRATCHER KRAYER, LLC, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Submitted: February 25, 2020
Decided: May 18, 2020

*Upon Appeal from the Court of Common Pleas–*
**AFFIRMED**.

**OPINION**

Stanford Fowler, *Pro Se* Appellant.
Samuel D. Pratcher, III, Esquire, Attorney for Appellee.

**STREETT, J.**

## Introduction

Stanford Fowler (the "Appellant") unsuccessfully sued the law firm of Pratcher Krayer, LLC (the "Appellee") in the Court of Common Pleas.[1] He had alleged that the law firm's fees, after a settlement involving a motor vehicle accident, did not comport with the retainer that he initially signed. This is an appeal of that decision.

Appellant had been involved in a multi-vehicle accident. Appellant eventually retained the law firm of Pratcher Krayer, LLC to represent him in a claim against one of the other drivers.[2] Appellant exhausted his PIP benefits (including some loss of wages benefits) under his own insurance policy, Travelers Insurance ("Travelers"). The retainer agreement that Appellant signed provided for the firm to represent him against the other driver, who was represented by GEICO Insurance ("GEICO"). The retainer agreement stated that the attorney's fee would be one-third of Appellant's total award.[3] A mediation was held and GEICO, that day, offered a settlement of $60,000. Appellee explained the settlement offer and the approximate

---

[1] Delaware Court of Common Pleas Case No. CPU4-19-000068

[2] Attorney Samuel Pratcher began representing Appellant while Attorney Pratcher was employed at Weik, Nitsche & Dougherty. Attorney Pratcher subsequently left Weik, Nitsche & Dougherty to form Pratcher Krayer, LLC. Appellant chose to continue to be represented by Attorney Pratcher and transferred his case to Pratcher Krayer, LLC.

[3] The retainer agreement was signed by Appellant and Attorney Pratcher while the latter was employed by Weik, Nitsche & Dougherty.

1

sum of money that Appellant would receive after payment of the attorney's fee, expenses, etc. Thereupon, Appellant signed the settlement agreement. Shortly thereafter, GEICO sent a $60,000 check and a release to Appellee's office. However, Appellant refused to sign the release because he believed that he was owed additional lost wages (which he calculated to be $25,000), that $25,000 should first be given to him from the settlement, and that Appellee's one-third fee should be determined from the remainder. As such, Appellant contended that Appellee was only entitled to one-third of $35,000. Appellant sued the law firm in the Court of Common Pleas.[4] The Court of Common Pleas decided in favor of the law firm, finding that Appellant did not meet his burden of proof. Appellant now appeals that judgment. For the following reasons, this Court affirms the Court of Common Pleas' decision.

## Statement of Facts

On June 9, 2017, Appellant was involved in a vehicle accident, sustained physical injuries, and was out of work for a period of time. The police report

---

[4] Appellant initially sued Attorney Pratcher personally but withdrew the lawsuit and then sued Appellee (Pratcher Krayer, LLC). The Complaint alleged that Appellee denied Appellant his $25,000 out-of-work compensation award.

indicated that another driver was at fault.[5]  Appellant was insured with Travelers and the other driver was insured with GEICO.

On June 17, 2017, Appellant signed a retainer agreement with Attorney Samuel Pratcher at Weik, Nitsche & Dougherty to represent Appellant in a cause of action against that other driver.  The agreement provided that the attorney's fee would be one-third of the total recovery.  Specifically, it stated that:

> [Appellant] agree[s] to pay said attorneys for services to be rendered pursuant to the retainer and employment a sum equal to thirty three and one third percent (33-1/3%) of the *total recovery* from [the other driver] on [Appellant's] said claim and cause of action on trial in Court, for which [Appellant] shall receive in settlement thereof, whether the settlement be made by [Appellant] direct or through said attorneys, or by any person or agencies whatsoever, together with all reasonable and necessary costs advanced incurred by said attorneys for [Appellant] in connection with the preparation, prosecution and handling of said claim and cause of action.[6] (Emphasis Supplied).

At some point, Attorney Pratcher left Weik, Nitsche & Dougherty to form Appellee law firm (Pratcher Krayer, LLC).  Appellant chose to remain a client of Attorney Pratcher and signed a transfer letter to have his case transferred to Appellee

---

[5] The police report of the accident states that the other driver was "[o]perating vehicle in inattentive, careless, negligent, erratic, reckless or aggressive manner.  The report states that Appellant's actions did not contribute to the accident.  Appellee's Answer Brief, at Ex. A.

[6] *Id.* at Ex. B.

3

law firm.[7] The transfer letter clearly stated that the terms of the retainer agreement would also transfer.

On September 18, 2018, Appellant and GEICO, at mediation, reached a settlement agreement for $60,000. The settlement agreement stated:

> The parties agree as follows: In exchange for an executed General Release and Stipulation of Dismissal of all claims with prejudice, the defendant [the other driver] will pay the plaintiff [Appellant] $60,000. The plaintiff is responsible for all outstanding medical expenses and/or health insurance liens, exclusive of PIP.
>
> *All parties have entered into this agreement by their own volition and understand the terms of the settlement. This document was reviewed by the parties before execution.*[8] (Emphasis Supplied).

Appellant signed the agreement after Appellee provided Appellant with a written estimate of what Appellant would ultimately receive (including a breakdown of medical expenses, costs, and the attorney's fee).

On September 24, 2018, GEICO sent a $60,000 check and a General Release form to Attorney Pratcher for Appellant to sign. The release form would discharge the other driver and GEICO from future claims. Appellant was required to sign the release form before the $60,000 settlement check could be cashed.

---

[7] At trial, Attorney Pratcher stated that he started the Appellee law firm and Appellant decided to follow Attorney Pratcher to the Appellee law firm. Attorney explained that Appellant signed the transfer letter and that it "clearly stated that any attorney's fees and costs would remain the same." Trial Transcript, at 32-33. The transfer letter was admitted into evidence at trial.

[8] Appellee's Answer Brief, at Ex. F.

4

On October 5, 2018, Appellant met with Attorney Pratcher concerning the GEICO check. Appellant refused to sign the release. Appellant stated that he (Appellant) was entitled to $25,000 in out-of-work compensation that he believed should not be included in the settlement amount when calculating the attorney's fee. Appellant contended that $25,000 should first be deducted from the $60,000 settlement amount prior to calculating the attorney's fee. Attorney Pratcher disagreed and explained that the signed retainer agreement clearly stated that Appellee law firm was entitled to one-third of the entire ($60,000) settlement amount.[9] Appellee advised Appellant that he could seek other professional advice and/or talk to the mediator about this issue.

## Procedural History

On October 25, 2018, Appellant filed a *pro se* lawsuit in the Court of Common Pleas (the "Trial Court") that named Attorney Pratcher personally. The Trial Court dismissed the lawsuit, informing Appellant that he could not sue Attorney Pratcher personally.

On January 11, 2019, Appellant then filed the instant action against Appellee. The Complaint stated in its entirety:

---

[9] Appellant also asserts that he asked Attorney Pratcher to appeal the settlement agreement and sue the other driver for pain and suffering and that Attorney Pratcher refused. *See* Appellant's Reply, at 2.

5

On June 09, 2017, I had a motor vehicle accident, which I sought an attorney with a firm in which Mr. Pratcher represented. The paralegal I spoke with, only know as Ryan, signed me up with the company. I was out of work because of the accident and she told me my out of work award would be mine and not the company's. Shortly after, Mr. Pratcher acquired his own firm in which I chose to stay with him. He assured me that nothing would change [and] everything would remain the same as before. On September 24, 2018 at Settlement, Geico awarded me $25,000 for my out of work compensation of which Mr. Pratcher is denying me which means he has gone against Geico's award.[10]

On July 24, 2019, a trial was held in the Court of Common Pleas.[11] Appellant presented three witnesses, Erin Radulski, Esq., a GEICO staff attorney who represented the other driver in the underlying claim;[12] Dawn Becker, Esq., GEICO's managing attorney who was Ms. Radulski's supervisor;[13] and Appellant who testified on his own behalf. Appellee was represented by Attorney Pratcher, who did not call any witnesses.

---

[10] Complaint, C.A. CPU 4-19-000068.

[11] The following documents were placed into evidence: Appellant's Complaint, Appellee's Answer, and Appellee's requests for admissions. In addition, Appellant's paystubs, photographs of Appellant's damaged vehicle, the attorney retainer agreement, the law firm transfer letter, a medical authorization letter, a letter from Attorney Pratcher advising Appellant that mediation was scheduled, the settlement sheet with award estimates, the settlement agreement, and GEICO's release form were included.

[12] Appellant subpoenaed Ms. Radulski.

[13] Ms. Becker was in attendance at the trial but not scheduled to be a witness. The Trial Court asked her to identify herself and Ms. Becker informed the court that she is Ms. Radulski's supervisor. Appellant then asked the court if he could question Ms. Becker. The court agreed.

Ms. Radulski testified that she defends motor vehicle cases assigned to her by GEICO. She represented the other driver (GEICO's insured) in the underlying accident case. She stated that the case settled at mediation for $60,000, the parties signed the settlement agreement, and a check and release were sent to Appellee. She also said that she had been trying to obtain the release from Appellant ever since the case settled and the check has not been cashed.

Ms. Radulski also testified that the $60,000 settlement was a lump sum and not itemized, allocated, or broken down in any way. When Appellant asked Ms. Radulski whether she remembered telling him that $25,000 of the settlement was for out-of-work compensation, Ms. Radulski stated that she did not recall saying that and that she would not have said that because she does not delineate out-of-work compensation in her settlement agreements.[14] She also explained that GEICO does not pay anything to a plaintiff until there is a final settlement. She testified that it was her understanding that the $60,000 settlement agreement resolved the entire matter.

Ms. Becker testified about GEICO's general process in arriving at a settlement offer. She stated that a plaintiff's out-of-pocket expenses, including loss of wages, would be included in the evaluation of that plaintiff's case. After the evaluation, a

_____

[14] At the hearing, Appellant accused Ms. Radulski of not being forthcoming on this issue. Trial Transcript, at 45.

lump sum amount to settle the case would be determined.  In response to Appellant's

question about whether out-of-work compensation is awarded at the end of

mediation, Ms. Becker stated that "[n]othing is considered individually, it is a full

and final settlement."[15]  She further explained that "when a settlement is reached in

each and every case we handle, it is a full and final settlement, it is not piecemeal, it

is over, it is done, a release is signed, that case is closed."[16]

> The Trial Court then asked Ms. Becker:

> And just for the record so it's clear, when GEICO chooses to settle a
> case, they evaluate the claim, all aspects of the claim, property damage,
> bodily injury, medical bills, lost wages, any other claims that were
> made, you come up with a dollar amount and that's the amount that's
> tendered in the settlement, how that is – and you don't apportion that in
> any way?[17]

Ms. Becker responded, "That is correct… that's how the case was evaluated, as a

lump settlement, we never delineate, never have, never will."[18]  She also explained

that once a release is signed and the check is cashed, the case is considered resolved

and GEICO has no further involvement.

---

[15] *Id.* at 56.

[16] *Id.*

[17] *Id.* at 57.

[18] *Id.* at 57-58.

Appellant then testified. Appellant presented three months of pay stubs as a basis for estimating that his out-of-work compensation should be $25,000. He also stated that GEICO told him that he would receive $25,000 as compensation for loss of wages.

Appellant testified that he retained Pratcher Krayer to pursue a claim against the other driver and Attorney Pratcher sent a letter to Appellant's insurance company (Travelers) asking them to pay Appellant's lost wages. Travelers then paid Appellant for loss of wages through July 11, 2017. Appellant asserted that Appellee's letter to Travelers proves that Appellee knew that he wanted compensation for loss of wages from Travelers and from GEICO. As such, Appellant reasoned, Attorney Pratcher should have informed him that GEICO would not issue a separate check for any out-of-work compensation in addition to the $60,000 agreed to in the settlement agreement.

Moreover, Appellant testified, Attorney Pratcher and a paralegal ("Ryan") assured Appellant that Appellee law firm was not representing Appellant regarding his out-of-work compensation (and would not charge a fee for helping him to obtain out-of-work compensation). Appellant explained that he transferred his case from Weik, Nitsche & Dougherty to Appellee law firm because of this assurance. Appellant also believed that Appellee would not collect an attorney's fee on any out-

9

of-work compensation from GEICO because Appellee had not charged an attorney's fee for successfully prompting Travelers to issue payment for loss of wages.[19]

Appellant also asserted that he paid his mortgage and medical expenses, while out of work, "with the expectation that [he would] get that [amount] back based on [his] out-of-work compensation."[20] Appellant felt that Attorney Pratcher should have told Appellant that accepting the settlement was not "a smart move" and that Appellant "should object … [to putting the] out-of-work compensation in a pool."[21] Appellant accused Attorney Pratcher of "lead[ing] [Appellant] down a road that [Appellant] didn't understand and didn't know that this is the way he do -- do other business."[22]

Appellant contended that:

[A]s my lawyer, he -- he should have -- he should have let me know from the -- from the door that this is what happened, this is what we do as lawyers. If he goes to the -- to -- you know, to -- to a settlement and your out-of-work money get involved, then I have to get a cut out of it. I have no problem with Mr. -- Mr. Pratcher getting his one-third from whatever else -- from -- you know, from the stuff that he got. I have no problem with Mr. Pratcher getting that money. I'm not going up against

---

[19] The Trial Court explained to Appellant that Appellant's insurance company sent the checks to pay him benefits under his policy for no-fault insurance and out-of-work expenses. Appellant responded, "Right." *Id.* at 76. The Trial Court then explained that those payments are not part of the lawsuit.

[20] *Id.* at 78.

[21] *Id.*

[22] *Id.*

him against what he should get, I'm going up against him that I had to come out my pocket -- because most people in Delaware that I talk to, they have to go to the lawyers and get money out [of] the lawyer's pocket while the case is pending. Then at the closing, the -- the people, whoever, individual, they''ll have nothing to get because all of it is belong to the lawyer because you get your -- your money. I choose not to do that… I go from -- I -- I learned to save three months -- at least three to four months of my expense, so I use my expense up and exhaust it with the notion that I'll get back my money at the end of settlement. Just like [Ms. Radulski] when she came in, she was eager to -- she told us that my -- I got the $25,000 before we went into an arbitration.[23]

Appellant then said:

Your Honor, that I -- my -- anything would have been changed from what we are already told from the other company [Weik, Nitsche & Dougherty], I would have -- I would have let Mr. -- Mr. Pratcher go on his -- on his merry way because the other company [Weik, Nitsche & Dougherty] assured me that they would never mess with my out-of-work money. Actually, the -- the paralegal told me the lawyers does not mess with out-of-work compensation. And that's my argument and that's -- and my understanding going forward until this day, Your Honor.[24]

Additionally, Appellant testified that he visited Attorney Pratcher several days

after signing the settlement agreement and told Attorney Pratcher that he wanted to

---

[23] *Id.* at 79. Attorney Pratcher moved to strike Appellant's statement suggesting that Ms. Radulski said prior to the start of mediation that Appellant was awarded $25,000 "[because] [t]hat is not her testimony…" *Id.* at 80. Appellant conceded that Ms. Radulski did not testify that she told Appellant that he would receive $25,000 but then asserted that Ms. Radulski chose not to remember what she told Appellant. Appellant then stated that he would like to pay to have Ms. Radulski take a polygraph. The Trial Court informed Appellant that it was not going to allow a polygraph and that, in the court's view, Ms. Radulski answered the questions that were put to her to the best of her ability.

[24] *Id.* at 82-83. Appellant then tried to present his mortgage as evidence to show his expenses but the Trial Court would not allow it because Appellant's mortgage was not relevant to Appellant's breach of contract claim against Appellee.

appeal the settlement. He said that Attorney Pratcher refused to appeal the settlement and told Appellant that he (Appellant) could contact the mediator and/or acquire a lawyer for the matter. Appellant stated that he did not need a lawyer.

Upon cross-examination, Appellant acknowledged that he signed a retainer agreement with Attorney Pratcher (then at Weik, Nitsche & Dougherty), he read the retainer agreement before he signed it, and he signed the transfer letter to remain with Attorney Pratcher in the new firm (Appellee). He also acknowledged that Attorney Pratcher's office notified him via letter to attend mediation with GEICO, he attended mediation on September 18, 2018, and at the end of the mediation he signed the settlement agreement. Appellant conceded that he did not read the settlement agreement prior to signing because he trusted Attorney Pratcher "to do the right thing" and he had "already [been] told that [he] ha[d] $25,000 sitting somewhere for [him]".[25] Appellant explained, "I did sign it, but I objected to it later on."[26] Appellant also conceded that the settlement agreement does not mention $25,000 and he could not produce any document that said that he was to be separately given $25,000 in out-of-work compensation.

---

[25] *Id.* at 99.

[26] *Id.* at 100. Appellant maintained that, around five days after he signed the settlement agreement, he called Appellee "to object to the fact that [Attorney Pratcher] … incorporated [Appellant's] $25,000" into the settlement agreement. *Id.* at 106.

After closing arguments, Appellant located a document (which he had previously misplaced) that he asserted supported his claim that Attorney Pratcher told him that he (Appellant) would receive $25,000 in out-of-work compensation. The document contained Attorney Pratcher's handwritten notation of "46k medical" and "25k wages."[27] Appellant testified that Attorney Pratcher gave him that document and said "[l]ook, this is what your out-of-work compensation [sic] going to be."[28]

The Trial Court allowed Attorney Pratcher to respond. Attorney Pratcher explained that the document was a proposed settlement sheet that was provided to Appellant during the mediation which indicated that $55,000 was the preliminary settlement amount. Attorney Pratcher testified that:

> At one point, [it] was relayed [to Appellant] what he would potentially net from a $55,000 settlement; that number was $26,547. At that point, I told [Appellant] that my goal, which is at the bottom of the document, was to get him to $60,000. When I was able to get GEICO to offer the $60,000, I then told [Appellant] what he would potentially net from the case; that number is $29,881. My point to Your Honor is this. In any case before you settle, you need to tell the client an estimate as to what they're going to walk away with. At no point in time did I tell [Appellant] you're getting [$]29,881 plus $25,000.[29]

---

[27] Although the evidence had closed, Attorney Pratcher did not object to Appellant admitting the document into evidence. The Trial Court then admitted the document into evidence.

[28] *Id.* at 126.

[29] *Id.* at 121.

The Trial Court then inquired about the handwritten notations of "46k medical" and "25k wages."[30] Attorney Pratcher explained:

> The 46,000 is what we were potentially claiming as total boardable expenses. The reason why I told [Appellant] about this 46,000 is because I don't believe I'm under any duty to advise GEICO that they've made a mathematical error; that's what I told [Appellant]. His wages weren't 25,000, they were technically about 15,000. GEICO made a computer error, I advised him that if they figure this out at a later date, they're likely going to pull the offer because you're getting potentially an additional recovery in the case. So at no point in time was he told anything other than the fact that this is potentially what you're going to walk away with. And I ask the Court to -- that's why I had no problem with introducing this document because if you look at it, if he was getting 29,000 plus he thought he was getting $25,000 in wages, what in the world would be left to cover medical bills and my costs?[31]

For clarification, the Trial Court asked Attorney Pratcher: "So the handwritten notes there, the 25,000, which is obviously a number that [Appellant] seized upon here in his dispute with you, was the number that was claimed to GEICO to help justify the settlement amount as an estimate of his lost wages?"[32] Attorney Pratcher replied, "Correct."[33]

---

[30] *Id.*

[31] *Id.* at 121-22.

[32] *Id.* at 122-23.

[33] *Id.* at 123.

At the conclusion of the trial, the Trial Court ruled that Appellant had not met his burden of proof and held in favor of Appellee. The court found that Appellant signed the retainer agreement and that Appellant agreed to pay Appellee one-third of the total recovery.

The Trial Court also found that Travelers' payment for lost wages did not show that Appellant was owed an additional $25,000 in out-of-work compensation that should have been excluded from the attorney fees.[34] The Trial Court found that Travelers paid Appellant for his lost wages under the PIP portion of Appellant's insurance policy until the benefits reached the $15,000 coverage limits.[35] Moreover, Appellee did not charge any fee for the Travelers' loss of wages payments because Appellee did not need to sue Travelers to obtain that money.[36]

The Trial Court next found that the "25k" handwritten on the proposed settlement sheet was used as a negotiating tool by Attorney Pratcher to increase

---

[34] The Trial Court found that Appellant did not "understand the difference between [his] insurance company paying [him] benefits under [his] insurance policy under PIP, the no-fault coverage that everybody in Delaware's required to have, versus the guy who caused the accident's insurance company settling the claim against the insured and paying [Appellant] benefits there." *Id.* at 128.

[35] During the trial, Appellant had confirmed that Travelers Insurance stopped sending checks because he had exhausted his PIP coverage. *See Id*. at 21.

[36] The Trial Court also explained that the payments by Travelers Insurance were not part of Appellant's lawsuit against Appellee. The Trial Court found that Attorney Pratcher had contacted Travelers Insurance on Appellant behalf and that Attorney Pratcher forwarded those checks to Appellant as a courtesy. *See Id.* at 76.

15

Appellant's settlement amount. It was not an amount separate from the settlement agreement.

The Trial Court then stated to Appellant:

When you settled the case, as the witnesses said, GEICO cuts a check to cover all the claims, whether it was $60,000 in bodily injury, $60,000 in lost wages or $60,000 in property damage or $60,000 for anything else, they don't break it down, they say, "Here's the money that settles all of your claims," and you get it divided up per your retainer agreement. And the retainer agreement says that Mr. Pratcher's firm's entitled to one-third of the total settlement. Your retainer agreement doesn't say he's entitled to one-third of your settlement after fees are deducted or after any other expenses. It works the other way; they get their one-third and then the fees are deducted, and that's what the letter shows you… [Y]ou feel that what Mr. Pratcher's firm did was wrong based on your understanding, but unfortunately, you haven't shown me sufficient evidence to show by a preponderance of the evidence that your understanding was the correct one… [U]nfortunately, the agreements you entered into, Mr. Pratcher's firm takes one-third off the top and then the costs are paid out and the medical expenses are paid out… There's nothing in the documents to indicate that an estimated [$]25,000 for out-of-work expenses would be deducted from the settlement and not subject to the one-third agreement.[37]

The Trial Court then held that, "having heard the evidence and looked at all the documents, Mr. Pratcher's firm is entitled to the one-third of the [$]60,000 and then the expenses are deducted."[38]

On August 7, 2019, Appellant appealed the decision to this Court.

---

[37] *Id.* at 132-33.

[38] *Id.* at 134.

## Parties' Contentions

In his Notice of Appeal, Appellant contends that he did not receive a fair and just trial, Attorney Pratcher fabricated stories and manipulated Appellant's subpoenaed witness, and Appellant was denied his out-of-work wages of $25,000 that was agreed upon by Appellee.

In his Opening Brief, Appellant argues that he should first be given $25,000 for out of work compensation before the law firm is allowed to take its one-third fee from the remainder of the settlement check. He writes that he was unaware that GEICO would not pay him out-of-work compensation until the end of the case. He also alleges that GEICO made a formal agreement to give Appellant $25,000 out-of-work compensation but "incorporated [the $25,000] with the overall settlement for the accident."[39]

Additionally, he contends that Attorney Pratcher should have informed him that GEICO would not separately set aside money for out-of-work compensation and that Pratcher intentionally misled him. He writes that Attorney Pratcher "was supposed to negotiate his payment separately from my out-of-work compensation, which I have documented on paper in his own writing, but instead, he kept for himself and was going to take a portion from it."[40]

---

[39] Appellant's Opening Brief, at sec. II.

[40] *Id.* at sec. III. Appellant writes that he was told that "any payments [Appellant] received for out of work compensation would not have any affiliation with paying Mr. Pratcher."

Appellant asserts that the loss of wages to which he is entitled amounts to $25,000 because his paycheck stubs show that during a three-month period he received $26,000 in wages and that "[t]his accident had me out of work for four months, so if the math is done accurately, my out of work compensation accumulates to about $26,000."[41]

He further states, as he did at trial, that Ms. Radulski (the GEICO attorney) informed Appellant before the mediation that he would receive $25,000 for out-of-work compensation separately from any other compensation. He then accuses Attorney Pratcher of improperly influencing Ms. Radulski to deny that she had promised Appellant that he would receive $25,000 for loss of wages.

Appellant writes that:

> [After Appellant questioned Ms. Radulski about whether she remembered telling Appellant that he would receive $25,000 in out-of-work compensation], Mr. Pratcher was quick to object to my questioning of my subpoenaed witness, GIECO [sic] counsel, Mrs. Erin Radulski. I found that very surprising because, before the trial started, I noticed Mr. Pratcher having a conversation with my subpoenaed witness, Mrs. Erin Radulski. At the trial, the context of their conversation was a red flag to me since they were inviting each other to a social meeting at their place of residence, and during trial, Mrs. Randulski [sic] had an episode of amnesia, completely forgetting my version of the events that took place, while she vividly and clearly remembered Mr. Pratcher's version of events.[42]

---

[41] *Id.*

[42] *Id.* at sec. IV.

Appellant asserts that his "attorney-client privilege has been violated by Mr. Pratcher by not differentiating what was agreed on by not making my out of work compensation separate from his retainer."[43]

He also claims that he was denied the right to appeal the settlement agreement or to sue the other driver involved in the accident for pain and suffering because Attorney Pratcher refused to appeal the settlement agreement and, instead, provided Appellant with the mediator's information and referred Appellant to another lawyer. Appellant acknowledged that he decided to represent himself.

In its Answering Brief, Appellee states that the Court of Common Pleas' decision should be affirmed because Appellant has failed to state any grounds to support reversal, the decision was supported by substantial evidence, and the Court did not an abuse its discretion.

Appellee writes that Appellant's allegations lack supporting evidence and lack documentation that he was guaranteed $25,000 for loss of wages. Appellee adds that Appellant signed the retainer agreement and admitted that he signed the retainer agreement but now attempts to add terms to the retainer agreement not found within its four corners. Appellee also writes that Appellant falsely alleges that Attorney Pratcher manipulated Ms. Radulski and mistakenly believes he is entitled to

---

[43] *Id.* at sec. V.

19

worker's compensation.[44]   Appellee further argues that Appellant's paycheck stubs are irrelevant because the 2019 stubs presented do not reflect his 2017 work history (Appellant was out of work during 2017 and the settlement agreement was signed in 2018).

In Reply, Appellant disagrees with the assertion that he failed to state grounds to reverse the lower court's judgment.  Appellant maintains that he clearly stated, in his Opening Brief, that his "attorney-client privilege was breached [and] [he] was denied the right to appeal [his] case or even to exercise the right to sue [the other driver] for pain and suffering…"[45]  Appellant asks this Court to "look into this case, and rule in [his] favor, as [Appellee] has no right to [Appellant's] out-of-work compensation."[46]  Appellant asserts that he was out of work for nearly five months, that he suffered financial hardship, and is not seeking workers' compensation.  He also contends that he presented evidence that proved his case.[47]

---

[44] Appellee seems to also suggest that Appellant is conflating out-of-work compensation with worker's compensation.  Appellee's Answering Brief, at 4.

[45] Appellant's Reply, at 2.

[46] *Id.* at 3.

[47] Appellant writes that the following evidence supports his case:

> [Appellee's] own words and negotiations, plus documents from my insurance company, GEICO and my jobs proof of wages.  I also have my pay stubs as referenced 4 months for $36,000 [sic], letters from travelers [sic] that mediated my case on my behalf that informed GEICO that they were responsible for the 96% of the claim, an agreement to mediate letter, and the letter from Mr. Pratcher's office about my lost wages.  I also have Mr. Pratcher's hand-written negotiation letter

## Standard of Review

Pursuant to 10 *Del. C.* § 1326(a), a party may appeal "any final order, ruling, decision, or judgment of the [Court of Common Pleas] in a civil action" to the Superior Court.[48] Appeals are reviewed on the record.[49] The Court's role is limited to determining "whether there is legal error, whether the [Trial Court's] factual findings are sufficiently supported by the record, and whether those findings are the product of an orderly and logical reasoning process."[50] Conclusions of law are reviewed *de novo*.[51] The Court of Common Pleas has "broad discretion to weigh evidence and assess witness credibility."[52] Furthermore, findings of the Court of

---

about [Appellant's] out-of-work compensation for $25,000 and the letter that proves me and my wife went to his office on the 5th of October 2018 to discuss my out-of-work compensation, after the mediation on the 18th of September 2018. I also have a letter for Weik, Nitsche, and Dougherty Attorney at Law, negotiating wages and salary verification form and a letter from GEICO informing me about the time period I have to settle my case. I also have three documents, two with wage benefits, and one with a paystub from travelers insurance [sic].

Appellant attached the agreement to mediate as a exhibit to his Reply. However, this document was not admitted into evidence at trial and the Court will not consider it. In any event, the agreement to mediate states that the settlement agreement resolves the matter.

[48] 10 *Del. C.* § 1326(a) ("From any final order, ruling, decision or judgment of the court in a civil action there shall be the right of appeal to the Superior Court of the State in the county in which said order, ruling, decision or judgment was rendered"). *See also Anderson v. R.A. Midway Towing*, 2006 WL 1971806, *2 (Del. July 14, 2006) ("The Superior Court has statutory authority to decide appeals from decisions of the Court of Common Pleas") (citing 10 *Del. C.* § 1326).

[49] 10 *Del. C.* § 1326(c) ("The appeal shall be reviewed on the record and shall not be tried de novo"). *See also Jones v. Hertz Corp.*, 2014 WL 3401606, *3 (Del. Super. July 8, 2014).

[50] *Hicklin v. Onyx Acceptance Corp.*, 970 A.2d 244, 248 (Del. Mar. 27, 2009).

[51] *Davis v. Frontier Commc'ns*, 2012 WL 1413490, *1 (Del. Super. Jan. 4, 2012).

[52] *Dryden v. Jang's Landscaping, Inc.*, 2011 WL 1848892, at *3 (Del. Super. Apr. 26, 2011).

21

Common Pleas that are supported by the record must be accepted by the reviewing court even if, acting independently, it would have reached a contrary conclusion.

## Discussion

Appellant appears to argue that the Court of Common Pleas' decision is contrary to the evidence and should be reversed. Appellant also asserts that the decision should be reversed because his attorney-client privilege was violated, Attorney Pratcher manipulated Appellant's witness, and Appellant was denied his rights to appeal the settlement agreement or to sue the other driver.

A careful review of the record and the parties' submissions reflect that the Court of Common Pleas' factual findings are supported by the record and are the product of an orderly and logical reasoning process. Additionally, it did not commit legal error in holding that Appellant did not meet his burden of proof.

The Court of Common Pleas held that Appellee was entitled to one-third of the entire settlement agreement amount of $60,000. It made this finding after reviewing all of the evidence and hearing all of the testimony. The Court of Common Pleas noted that the retainer agreement, signed by Appellant, said that Appellee was entitled to one-third of the total settlement amount. The Trial Court also stated that Appellant's witnesses testified that GEICO does not break down the settlement amount and that the $60,000 was intended to cover all of Appellant's

claims. Moreover, Ms. Radulski testimony contradicted Appellant's claim of a $25,000 promise for out-of-work compensation.

Furthermore, for the first time on appeal, Appellant alleges that Appellee violated the attorney-client privilege. However, this Court's review of the lower court's decision is limited to the record. As such, this Court will not consider this additional allegation because "[a]rguments that are not raised below ordinarily cannot be raised for the first time on appeal."[53]

Moreover, even if this Court were to consider Appellee's contention that his attorney-client privilege had been violated, Appellant's argument is without merit. It is unclear whether Appellant means that his attorney did not explain the retainer agreement and the settlement agreement to his satisfaction, or whether an attorney must pursue a client's every whim, or whether Appellant is referencing the conversation that he observed between Attorney Pratcher and his witness (Ms. Radulski).

Appellant seemingly misapprehends the attorney-client privilege. The attorney-client privilege generally "protects the communications between a client and an attorney acting in his professional capacity" against disclosure to third

---

[53] *Montgomery v. Aventis Pharmaceuticals*, 2007 WL 4577625, at *2 (Del. Super. Dec. 14, 2007). *See also*, *Wilmington Trust Co. v. Conner*, 415 A.2d 773, 781 (Del. Mar. 26, 1980) ("Appeals from the Court of Common Pleas to the Superior Court are to be determined from the record below and are not to be tried de novo. It is also the general rule in this State that issues not raised in the trial court shall not be heard on appeal.") (internal citations removed).

parties.[54]   "The burden of proving that the privilege applies to a particular communication is on the party asserting the privilege."[55]   Here, an allegedly incomplete explanation of a retainer agreement or a settlement agreement and the refusal to appeal a signed settlement agreement do not fall within that definition. Moreover, Appellant has not alleged that Appellee improperly disclosed privileged attorney-client communications to anyone.

So too, Appellant's contention that Attorney Pratcher manipulated Appellant's witness (Ms. Radulski) and precipitated her "amnesia" is unsupported, does not meet that definition of a violation of the attorney client privilege, and was not raised before the Court of Common Pleas.   Moreover, Appellant does not contend that the Court of Common Pleas abused its discretion or made a legal error in allowing Ms. Radulski, who was his witness, to testify.   Appellant's allegation appears to be conjectural and based on his disappointment that his witness contradicted his claim that she had promised $25,000 in out-of-work compensation.[56]   Furthermore, the Court of Common Pleas was satisfied that Ms.

---

[54] *Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 419 (Del. Jan. 14, 2010).

[55] *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. Jan. 3, 1992).

[56] Appellant offers no evidence that Attorney Pratcher manipulated Ms. Radulski other than Appellant's suspicion based on the alleged facts that Attorney Pratcher and Ms. Radulski conversed before trial and Ms. Radulski's testimony did not support Appellant's contention that she told Appellant he would receive $25,000 in out-of-work compensation.

Radulski testified to the best of her ability.[57] Additionally, Ms. Becker, also Appellant's witness, also contradicted his claim when she testified that GEICO never delineates compensation when offering a settlement agreement.

Appellant provided no corroborative evidence of his claim that "Ryan" from the attorney's office had made promises as to lost wages or that GEICO had promised $25,000. Appellant also did not present evidence that it was ever GEICO's practice to pay lost wages separately from a global settlement agreement. The law is clear that the Court has "broad discretion to weigh evidence and assess witness credibility." Here, the Court of Common Pleas did not commit error or abuse its discretion in finding that the evidence did not support Appellant's case.[58]

Appellant's final argument (that he was allegedly denied his right to appeal the settlement agreement and sue the other driver) also fails. The record establishes that Appellant voluntarily signed the settlement agreement and, although Appellee refused to appeal the settlement, Appellee did not prevent him from pursuing an appeal. Indeed, Appellant admits that Attorney Pratcher told him that he could seek another attorney to request an appeal of the settlement agreement.[59]

---

[57] The Court of Common Pleas stated that "[Ms. Radulski] answered the questions that were put to her to the best of her ability." Trial Transcript, at 81.

[58] *Dryden v. Jang's Landscaping, Inc.*, 2011 WL 1848892, at *3 (Del. Super. Apr. 26, 2011).

[59] Appellant states: "I then asked [Attorney Pratcher] if we could appeal the case, he wouldn't, so he gave me the information for the mediator to contact and also referred me to another lawyer."

While it is understandable that Appellant would like to receive more money for his loss of wages, Appellant did not prove his case. The Court of Common Pleas found that the retainer agreement entitled Appellee to one third of the total settlement and Appellee voluntarily signed the retainer agreement. The Court also found that Appellee had explained the terms and ramifications of the settlement agreement prior to Appellant signing the settlement agreement; Appellant did not read the settlement agreement but knew that the settlement agreement was for $60,000; Appellant was told approximately how much money he would ultimately receive under the settlement agreement; and Appellant voluntarily signed the settlement agreement.

## **Conclusion**

Accordingly, for the foregoing reasons, the decision of the Court of Common Pleas is **AFFIRMED**.

**IT IS SO ORDERED**.

/s/ *Diane Clarke Streett*
Diane Clarke Streett, Judge

---

Appellant's Opening Brief, at sec. II. However, Appellant explains: "I decided to represent myself and become my own lawyer." *Id.*

26