IN THE SUPREME COURT OF THE STATE OF DELAWARE

WARREN BIDDLE,[1]           §
                            §    No. 457, 2019
    Respondent Below,      §
    Appellant              §    Court Below: Family Court
                            §    of the State of Delaware
    v.                     §
                            §    File No. CN00-9761
BEATRICE MILLER,            §    Petition No. 18-29795
                            §
    Petitioner Below,      §
    Appellees.             §

Submitted: May 13, 2020
Decided:   June 16, 2020

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## <u>ORDER</u>

This 16th day of June, 2020, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    This is an appeal from a Family Court order enforcing a property-division order entered by stipulation of the parties nearly twenty years ago.

(2)    Warren Biddle and Beatrice Miller divorced on December 21, 2000 after twenty years of marriage. They executed a Stipulation and Order Resolving All Ancillary Matters (the "Ancillary Order") to divide the marital estate. The Family Court signed the Ancillary Order on April 4, 2001.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(3)     As part of that Ancillary Order, Miller was to receive a portion of Biddle's Delaware State Employees' Pension.  Specifically, Biddle's pension was to be divided using the Cooper Formula with a 50% multiplier, meaning that Miller would receive one-half of the portion of Biddle's pension attributable to his years of service while married to Miller.  Miller was also to receive 100% of the pension's preretirement survivor benefit.  The Ancillary Order did not assign responsibility for securing a pension allocation order[2] though the parties did agree to execute, upon request, any document that was required to effectuate the Order's provisions.

(4)     In 2012, Biddle met with state officials to discuss his retirement benefits. At that meeting, he learned that his pension would not be divided because neither of the parties had filed a pension allocation order. He remained employed as a teacher

---

[2] A pension allocation order, which is signed by the Family Court, "creates and recognizes the existence of a [former spouse's] right to a portion of a Participant's accrued benefit in [the Delaware State Employees' Pension Plan]." "Pension Allocation Order", *The State of Delaware*, available at https://open.omb.delaware.gov/forms/ActiveMembers/QdroTemplatenew.pdf (last visited June 8, 2020); s*ee T.E.B. v. J.A.O., JR.*, 2017 WL 4873505, at *2 (Del. Fam. Ct. Oct. 12, 2017).

until June 2013, when he retired at the age of 56. Biddle did not inform Miller that he was retiring early.[3]

(5) On August 16, 2018, Miller submitted a pension allocation order to Biddle for his signature. When Biddle refused to sign or return the pension allocation order, Miller filed a *pro se* Petition for a Rule to Show Cause (the "Petition") on October 2, 2018—the year Biddle turned 62—seeking future payments from Biddle's pension, back payments from the five years he had been retired, and court costs. Biddle filed an answer to that Petition (the "Answer"), admitting that he had retired early, that he had spoken with state officials before retiring, and that he knew Miller had not filed a pension allocation order and thus would not be receiving the portion of Biddle's pension benefits assigned to her under

---

[3] Answering Br. at 9 ("It is undisputed that [Biddle] did not communicate with [Miller] to tell her about his retirement."); App. to Answering Br. at B49 (Family Court found as a matter of fact that Biddle "failed to notify [Miller] he intended to retire at age fifty-six, six years prior to age sixty-two."). Delaware state employees hired before January 1, 2012 may receive their full pension if they have: (a) "[f]ive (5) years credited service (must have five (5) consecutive years of credited service) and ha[ve] attained age 62;" (b) "[f]ifteen (15) years of credited service (must have five (5) consecutive years of credited service) and ha[ve] attained age 60;" or (c) "[t]hirty (30) years of credited service (must have five (5) consecutive years of credited service) regardless of age." "Frequently Asked Questions," *State of Delaware Office of Pensions*, https://open.omb.delaware.gov/pensionPlans/StateEmp/sep_faqs.shtml (last visited on May 11, 2020). The court appears to have found, and Biddle did not contest, that his "full" retirement age was 62. *Id.* at B49.

the 2001 Ancillary Order.[4]  Biddle's sole affirmative defense in the Answer was laches.

(6)  After Miller retained counsel, the Family Court conducted a case management teleconference.  During that conference, the court suggested that the parties submit briefs addressing whether laches was available as a defense.  Miller then moved to amend the Petition to include a request for attorney's fees because she had retained counsel after the initial Petition was filed (the "Amended Petition").  Biddle opposed the motion to amend.  The Family Court nevertheless granted leave to amend, and the Amended Petition was served on Biddle on February 16, 2019.  The parties timely briefed the question of laches, but Biddle did not file an answer to the Amended Petition until March 6, eight days after his answer was due under Family Court Civil Rule 15.  Biddle's answer (the "Amended Answer") included fourteen affirmative defenses including unclean hands, lack of jurisdiction, and—strangely—that  Miller's claims "[were] barred because the duty of Child Support expires at the age of majority."[5]  Miller then filed a Motion to Strike the Amended Answer (the "Motion to Strike") on the grounds that the Amended Answer was

---

[4] App. to Answering Br. at B3 (Biddle's Answer, which admits that "[i]n 2012, Respondent had a meeting with state officials to discuss potential retirement benefits and his retirement benefits.  At that time, he was informed that his pension would not be divided because an order had not been provided to the state dividing benefits.  Relying on the amount of pension quoted by the pension official, Respondent elected to retire as of June 2013 which puts his date of retirement five years and five months prior to the filing of the petition.").

[5] *Id*. at B30.

untimely under Family Court Civil Rule 15 and that the Amended Answer included thirteen new affirmative defenses, some of which were waived and patently inapplicable.

(7) In a June 12, 2019 "Order on the Parties' Briefing Regarding the Equitable Defense of Laches,"[6] the Family Court concluded that laches was not an available defense because Biddle could not establish unreasonable delay by Miller or that he had suffered prejudice—the second and third prongs required for the defense. Specifically, the court held that Miller did not unreasonably delay in filing the Petition because the Ancillary Order was a court order and therefore not subject to a statute of limitations. Alternatively, the court noted that the Ancillary Order was subject to a twenty-year statute of limitations because it was filed under seal. The court further noted that it could not "fault [Miller] for waiting until 2018, presumably the year [Biddle] would have been eligible for retirement, because there is no reason to require a [pension allocation order] . . . be entered prior to that date of retirement."[7] As to the prejudice prong, the court could not "find [Biddle] was prejudiced by [Miller's delay] because . . . he too had an obligation to inquire whether [Miller] would receive her portion of his pension, he failed to do so, and he failed to notify [Miller] he intended to retire at age fifty-six, six years prior to age sixty-two."[8] That

---

[6] *Id.* at B40, B47–49.
[7] *Id.* at B48.
[8] *Id.* at B49.

5

Biddle had an obligation to ensure Miller was getting her part of the pension meant that he could not suffer prejudice—because his own failure to fulfill his obligations was as much a contributing factor to the alleged harm as Miller's failure. The court also found that laches was unavailable as a defense because Biddle had acted in bad faith by not notifying Miller of his planned retirement so that she could submit a pension allocation order to the State Pension Office.

(8) The Family Court also granted Miller's Motion to Strike and scheduled a hearing on the Amended Petition. At the hearing, Miller moved for summary judgment based on Biddle's verified admissions contained in his answering brief on the issue of laches and renewed her request for attorney's fees. The court granted the oral motion for summary judgment, enforcing the Ancillary Order and requiring back payment of the five years of missed pension payments, but reserved decision on the question of fees. After Miller submitted an Affidavit of Attorney's Fees, the court denied her fee application. But when Miller moved for reargument, the court reconsidered—and granted—the fee application, concluding that the Ancillary Order "clearly indicates that any party committing a breach of the Order shall be responsible for all legal fees associated with the breach."[9]

(10) On appeal, Biddle makes five arguments. First, he argues that the Family Court erred in granting summary judgment, because under Family Court

---

[9] Second Corrected Opening Br. at 8.

6

Civil Rule 56, summary judgment motions must be made in writing with a stipulated set of facts. Second, he challenges the Family Court's finding that laches was unavailable as a defense. Third, he claims that laches did apply, because the statute of limitations on the Ancillary Order was not twenty years as the Family Court found, but rather three years—because the Order "did not include the word SEAL next to the signatures on the document."[10] Fourth, Biddle appeals the court's granting of Miller's Motion to Strike his untimely Amended Answer because Miller did not allege any prejudice in her Motion to Strike. And fifth, Biddle challenges the court's award of attorney's fees to Miller, contending that the court "failed to consider . . . the overall considerations of equity."[11]

(11) We review grants of summary judgment *de novo*.[12] We review an award or denial of attorney's fees for abuse of discretion, but "review *de novo* the legal principles applied in reaching that decision."[13]

(12) Biddle's first argument—that the Family Court was prohibited from granting summary judgment without a written motion—is unpersuasive. It is the case that Family Court Civil Rule 56(a) provides that "a motion for summary judgment shall not be filed without Court Order following a motion therefor [and

---

[10] *Id.* at 3.
[11] *Id.* at 39.
[12] *In re Krafft-Murphy Co., Inc.*, 82 A.3d 696, 702 (Del. 2013).
[13] *Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 417 (Del. 2010).

that] [n]o motion for summary judgment shall be filed unless accompanied by a stipulated set of facts . . . ." But it is equally true that the Family Court Rules "should be construed, administered and employed by the Court and the parties to secure the just, speedy and inexpensive determination of every proceeding."[14] And Rule 7(b) provides that motions may be made orally if during a hearing or trial. Specifically, Rule 7 provides that "[a]n application to the Court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Hence, we conclude that it was consistent with Rule 7, read in conjunction with Rule 1, for the Family Court to hear Miller's oral motion, which she made at a hearing, in the interest of a just, speedy, and inexpensive determination of the proceeding.

(13) Biddle's second argument, challenging the Family Court's ruling that the defense of laches was not available, is also unpersuasive for one dispositive reason: laches is an equitable defense,[15] and the Family Court found that Biddle had acted in bad faith and therefore had unclean hands. It is a maxim of equity that "a suitor who engaged in his own reprehensible conduct in the course of [a] transaction at issue must be denied equitable relief."[16] Further, the trial court "has broad

---

[14] Family Ct. R. Civ. P. Rule 1.
[15] *Whittington v. Dragon Grp., L.L.C.*, 991 A.2d 1, 7 (Del. 2009).
[16] *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 875–76 (Del. 2015).

discretion in determining whether to apply the doctrine of unclean hands."[17] Because "the question of unclean hands is factual, our review will be limited to an inquiry as to whether the findings below support the conclusion that [Biddle] had unclean hands."[18]

(15)    Biddle's argument appears to be that the court did not base its bad faith finding on clear and convincing evidence and that, therefore, its unclean hands conclusion could not stand.[19]  But the court made its bad-faith finding upon facts *provided by Biddle himself* in his Answering Brief on the question of whether laches applied, as well as in the affidavit Biddle attached to that brief.  The facts, as admitted by Biddle, are damning—he knew that Miller was entitled to a share of his pension, he knew that Miller had not yet filed the pension allocation order, he retired early without informing Miller, and he continued to collect his full pension knowing that Miller was not receiving that to which she was entitled.  Those admissions are clear and convincing and support the Family Court's finding of bad faith.  Biddle received money he knew he was not entitled to and cannot now rely on an equitable defense when he himself engaged in bad conduct.  The court's denial of Biddle's laches defense was thus not an abuse of discretion.

---

[17] *SmithKline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442, 448 (Del. 2000).
[18] *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 876 (Del. 2015).
[19] Second Corrected Opening Br. at 21–22.

(16) Even if we were to set aside the Family Court's unclean hands finding, Biddle's other arguments in support of his laches defense would still come up short. Biddle attempts to use statutes of limitations as analogies—but laches need not refer to a specific time period.[20] Rather, "[l]aches is an unreasonable delay by a party . . . [which] can range from as long as several years to as little as one month. The temporal aspect of the delay is less critical than the reasons for it."[21] Miller did not file her Petition until 2018, which is when Biddle would have turned 62—his normal retirement age. If she had to assume when Biddle was retiring, that would have been the most reasonable assumption. Biddle, however, retired early and did not inform Miller. Under these circumstances, Miller's delay was reasonable.

(17) Because we agree with the Family Court that laches does not apply both because of unclean hands and because Miller did not unreasonably delay, Biddle's third argument, regarding the 20-year statute of limitations for documents filed under seal, is moot.

(18) The Family Court also did not err by granting Miller's Motion to Strike. Family Court Civil Rule 15 provides that "[a] party *shall* plead in response to an amended pleading within the time remaining for response to the original pleading or

---

[20] *Whittington*, 991 A.2d at 7 ("[T]he equitable doctrine of laches does not prescribe a specific time period as unreasonable.").
[21] *Id.*

10

within 10 days after service of the amended pleading, whichever period may be longer, unless the Court otherwise orders."[22] The Amended Petition was served on Biddle on February 16, 2019 and any responsive pleading was due no later than February 26. Biddle filed his Amended Answer on March 6, eight days after the deadline and without filing a motion for leave to file a late reply.

(19) Even if Biddle's delay did not justify the Family Court's granting of Miller's Motion to Strike—which it does—the Family Court's decision was justified because the Amended Answer included vexatious affirmative defenses. For example, Biddle asserted as affirmative defenses: lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and lack of service—all defenses that are conspicuously inapplicable. Biddle also asserted an affirmative defense that Miller's "claims [were] barred because the duty of Child Support expires at the age of majority"[23]—a defense that is entirely irrelevant to Miller's Petition. Because the Amended Answer was both untimely and raised frivolous defenses, the court did not err by granting Miller's motion to strike.

(20) Finally, the Family Court did not err in awarding Miller her attorney's fees because a fee award was mandated by the Ancillary Order. In particular, the Ancillary Order provides that "[i]n the event of a breach . . ., the party committing

---

[22] Emphasis added.
[23] App. to Answering Br. at B30.

the breach shall be obligated to pay the reasonable and necessary costs, including such reasonable legal fees . . . ."[24]  The court held that Biddle breached the stipulated Ancillary Order by failing to inform Miller that he had retired and taking her share of his pension payments.  Accordingly, the court did not err in granting Miller her attorney's fees.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[24] App. to Second Corrected Opening Br. at A27.