COURT OF CHANCERY
OF THE
STATE OF DELAWARE

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 5, 2023

Joseph L. Christensen, Esquire
Christensen & Dougherty LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801

Robert L. Burns, Esquire
Daniel E. Kaprow, Esquire
Kyle H. Lachmund, Esquire
Richards, Layton & Finger P.A.
920 North King Street
Wilmington, DE 19801

RE:     *William J. Brown v. Matterport, Inc., et al.*
        C.A. No. 2021-0595-LWW

Dear Counsel,

I write regarding the three discovery motions pending before me. The plaintiff

filed two motions to compel,[1] and the defendants filed a motion for a protective order

and relief from the court's scheduling order.[2]

Oral argument is unnecessary. I am familiar with the state of discovery in this

action, having ruled on several previously filed motions. After reviewing the present

motions and the dozens of accompanying exhibits, I conclude that the defendants'

---

[1] Pl.'s Mot. to Compel Interrog. Resps. (Dkt. 217) ("Pl.'s MTC Interrogs."); William J. Brown's Mot. to Compel (Dkt. 218) ("Pl.'s MTC Docs."). Brown has also filed a motion seeking sanctions for alleged spoliation, which will be addressed separately. *See* William J. Brown's Mot. to Compel, Mot. for Spoliation Sanctions, and Mot. for Adverse Inferences (Dkt. 227).

[2] Defs.' Mot. for Protective Order and Relief from Scheduling Order (Dkt. 212) ("Defs.' Mot. Protective Order").

motion should be granted and the plaintiff's motions should be denied (with limited exceptions described below).

## I.   BACKGROUND

Plaintiff William J. Brown brings this action against defendants Matterport, Inc. (formerly known as Gores Holdings VI, Inc.), Matterport Operating, LLC ("Legacy Matterport" and with Matterport, Inc., the "Matterport Defendants") and four former directors of Legacy Matterport (the "Director Defendants").[3]  The factual background of this bifurcated proceeding is outlined in my Memorandum Opinion following the phase one trial.[4]  The five-day, phase two trial scheduled for November will take up Brown's breach of fiduciary duty claims, among others.  Generally speaking, Brown alleges that the defendants improperly prevented him from selling his Matterport shares through lockup restrictions.

Phase two discovery began last fall.  Earlier this year, I resolved several motions that focused on discovery the defendants sought from Brown and certain

---

[3] *See* Pl.'s Verified Third Am. Compl. (Dkt. 140) ("Compl.").

[4] Post-Trial Mem. Op. Regarding Count I (Dkt. 122); *Brown v. Matterport, Inc.*, 2022 WL 89568, at *2 (Del. Ch. Jan. 10, 2022), *aff'd*, 282 A.3d 1053 (Del. 2022) (TABLE).

non-parties.[5]  Now, the parties have filed motions concerning the discovery Brown served on the defendants.

## II.    ANALYSIS

Court of Chancery Rule 26(b) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[6]  Although the scope of discovery is broad, it is not limitless.  This court "may exercise its sound discretion in delineating the appropriate scope of discovery."[7]

These principles guide my review of the motions to compel filed by Brown: one concerning interrogatory responses and the other concerning document discovery.  The former seeks an order requiring various defendants to respond to certain interrogatories "in full."[8]  The latter seeks an order requiring the defendants to apply certain search terms and collect data from two sources.[9]

---

[5] *See* Dkts. 194-97; Tr. of Feb. 10, 2023 Oral Arg. and Rulings (Dkt. 202) at 45-56 (granting defendants' motion to compel, denying Brown's motion to quash, and denying Brown's motion in limine).

[6] Ct. Ch. R. 26(b)(1).

[7] *In re Tyson Foods, Inc.*, 2007 WL 2685011, at *3 (Del. Ch. Sept. 11, 2007).

[8] Proposed Order Granting Pl.'s Mot. to Compel Interrogs. (Dkt. 217) ¶¶ 2-8 ("Proposed Order").

[9] Pl.'s MTC Docs. 13.

Separately, the defendants filed a motion for a protective order and relief from the scheduling order entered in this case.[10]  Brown insists that the defendants' witnesses sit for depositions now—despite escalating discovery disputes—and reserves the right to recall those witnesses later.  The defendants have not opposed Brown's requests for depositions.  They ask that the court preclude the depositions from going forward until written discovery is complete.  To accommodate this, the defendants request a continuation of the trial date and all interim deadlines.[11]

I address each motion in turn.

### A.    Interrogatories

In his Motion to Compel Interrogatory Responses, Brown contends that the defendants' interrogatory responses are inadequate, incomplete, or fail to comply with Court of Chancery Rule 33(d).[12]  The parties have attempted to address the 18 interrogatory responses at issue by category.  For each grouping, I agree with the defendants that their responses are appropriate.

---

[10] Defs.' Mot. Protective Order ¶ 5.

[11] Under the operative scheduling order, fact discovery ends on June 15, 2023 and trial begins on November 13, 2023.  Dkt. 175.

[12] Proposed Order ¶¶ 2-8; *see generally* Pl.'s MTC Interrogs.

First, Brown argues that the defendants failed to provide detailed descriptions of oral communications.[13]  For example, Interrogatory 40 asks the Matterport Defendants to "describe communications . . . relating to Brown's shares," and Interrogatory 46 asks "the Director Defendants to identify all reports, information, statements, and records presented to Matterport by any officer, director or advisor, as the Director Defendants referenced in their Fourth Affirmative Defense."[14]  In response, the defendants identified certain communications between Matterport and its transfer agent or advice relied upon by the Director Defendants.[15]  The defendants did not elaborate on the substance of the communications or the advice.

Additionally, Brown seeks supplemental responses to contention interrogatories about disputed legal issues,[16] and the redefinition of a term in Legacy Matterport's charter.[17]  In Interrogatories 36 to 39, for example, Brown asks the

---

[13] Pl.'s MTC Interrogs. ¶¶ 2-4.

[14] *Id.* ¶ 2.

[15] *Id.* ¶¶ 2-4; Defs.' Opp'n to Pl.'s Mot. to Compel Interrog. Resps. and Mot. to Compel and Reply in Further Supp. of Defs.' Mot. for Protective Order and Relief from Scheduling Order ("Defs.' Opp'n to Pl.'s MTCs") ¶¶ 11-14.

[16] Pl.'s MTC Interrogs. ¶¶ 5-9; Defs.' Opp'n to Pl.'s MTCs ¶¶ 15-20.  This category includes Interrogatories 36-39, 54, 64-67, and 74 to the Matterport Defendants, and Interrogatory 52 to the Director Defendants.

[17] Pl.'s MTC Interrogs. ¶ 6; Defs.' Opp'n to Pl.'s MTCs ¶¶ 21-23.  This category includes Interrogatory 43 to the Matterport Defendants and Interrogatory 34 to the Director Defendants.

Matterport Defendants for information about Matterport's contention that it was not required to register the transfer of Brown's Matterport shares and its contention about alleged liability to Brown due to the delay in registering the transfer.[18] Brown avers that the defendants have "refused to provide responses."[19] But the Matterport Defendants served a response explaining the basis for their contention that Matterport believed, as of November 2021, Brown's shares were subject to transfer restrictions.[20] The Matterport Defendants also stated their position on Brown's claimed damages.[21]

---

[18] Pl.'s MTC Interrogs. ¶ 5.

[19] *Id.*

[20] The Matterport Defendants responded: "Subject to and without waiver of the foregoing objections . . . as of November 2021, Defendants understood Plaintiff's Matterport shares to be Lockup Shares subject to transfer restrictions set forth in Section 7.10 of the A&R Bylaws, which was the subject of ongoing litigation before the Court prior to the Court's January 10, 2022 Memorandum Opinion ruling that 'Brown's Matterport shares are not Lockup Shares under Section 7.10 of the A&R Bylaws' and affirmance on July 27, 2022 of that ruling on appeal. Matterport further states that Brown altered his letters of transmittal that he submitted for the 5,713,441 Matterport shares in question." *Id.* Ex. D at 15-21.

[21] In addition to restating their response reproduced *supra* note 20, the Matterport Defendants stated: "[I]f Brown had not been subject to a lockup past its expiration, Brown would have obtained and sold his Matterport shares at his earliest opportunity after the de-SPAC transaction closed, and much earlier than November 2021. The trading price of Matterport's Class A stock on the date that Brown would have sold his shares (or a reasonable period thereafter) may be less than the weighted average sales price of approximately $14.09 per share that Brown pleads he received from his share sales in January 2022. The date that Brown would have sold his shares, and a reasonable period for Brown to have sold his shares, are subjects of discovery in this case."). *Id.* Ex. D at 19-21.

The defendants also sufficiently responded to Brown's interrogatories concerning the redefinition of "Liquidation Event" in Legacy Matterport's charter. Brown wants to know "why the amendment was done including the intended effect of the amendment on other agreements that incorporated, referenced or were triggered by a Liquidation Event as defined in the charter."[22] The defendants told him.[23]

In my view, the defendants have satisfied their obligation to respond to the relevant interrogatories. They disclosed sources of information and identified key facts that will make document discovery and depositions more fruitful. Beyond that, the sort of narrative accounts Brown seeks are more appropriately obtained through depositions.[24] To order the defendants to provide lengthy written descriptions of

---

[22] *Id.* ¶ 6 (emphasis omitted).

[23] *Id.* Ex. D at 25-26 (Matterport "respond[ing] that the definition of the term 'Liquidation Event' in Legacy Matterport's charter was amended prior to the announcement or closing of the Business Combination Transaction because Matterport determined in consultation with its advisors that such an amendment was appropriate to eliminate any uncertainty concerning whether the Business Combination Transaction constituted a Liquidation Event within the definition of that term"); *id.* Ex. E at 15-16 (Director Defendant responding the same). Brown claims the defendants' responses were "evasive . . . [because they] simply restate[] the act of amending." Pl. William Brown's Reply in Supp. of Mots. to Compel (Dkt. 239) ¶ 24. Brown wants to know "why" the amendment was made, as well as how the redefinition affected other agreements and corporate documents. *Id.* He is entitled to ask these questions during depositions.

[24] *See Tyson Foods*, 2007 WL 2685011, at *3 (denying motion to compel responses to interrogatories requesting the identification of communications, agreements, and payments "because the information sought" was "more appropriately obtained through deposition");

information Brown can effectively obtain in other forms would create needless make-work.[25]

Next, Brown challenges the defendants' responses to interrogatories about their denials in their Answer to the operative Complaint.[26] Brown asserts that the Matterport Defendants must provide the "factual basis" for their denials.[27] But the corresponding paragraphs of Brown's Complaint contain legal conclusions to which

---

*JPMorgan Chase & Co. v. Am. Century Cos.*, 2013 WL 1668393, at *7 (Del. Ch. Apr. 18, 2013) (explaining that answers to contention interrogatories "may be more efficiently addressed by the forthcoming document production and deposition testimony"); *Lorch v. Dyson-Kissner-Moran*, 1995 WL 347784, at *2 (Del. Ch. May 31, 1995) ("My experience and my understanding of the course of litigation suggests that interrogatories can be drafted in such a way as to disclose the sources of information and rudimentary basic facts that support the allegations in a complaint and then flesh out the situation by going to the actual source by way of deposition.").

[25] The fact that the Rules of the Court of Chancery do not cap the number of depositions a party may serve is not an invitation to weaponize written discovery. *See In re Pennzoil Co. S'holders Litig. Cons.*, 1997 WL 770663, at *2 (Del. Ch. Oct. 27, 1997) ("[T]he discovery process in the Court of Chancery should be carefully supervised to avoid wasteful duplication and to avoid the risk that discovery will become a strategic weapon, rather than a legitimate method to flesh out issues for the impending trial."); *see also In re MultiPlan Corp. S'holders Litig.*, 2022 WL 7351803, at *2 (Del. Ch. Oct. 12, 2022) (questioning the propriety of voluminous depositions seeking substantive narrative responses).

[26] Pl.'s MTC Interrogs. ¶¶ 7-9; Defs.' Opp'n to Pl.'s MTCs ¶¶ 24-26. This category includes Interrogatories 50 and 51 to the Matterport Defendants.

[27] Pl.'s MTC Interrogs. ¶ 8.

no response was required.[28] To the extent that Brown seeks substantive information, it was provided in response to several other interrogatories.[29]

Brown further avers that the Director Defendants have waived privilege by stating in response to Interrogatory 45 that they acted "in good faith and in reliance on advice provided by Matterport's advisors."[30] In Brown's view, the Director Defendants must now disclose this advice because they raised an advice of counsel defense. I disagree. "A party places her attorney-client communications at issue by injecting (1) 'the privileged communications themselves into the litigation,' or (2) 'an issue into the litigation, the truthful resolution of which requires an examination of confidential communications.'"[31] The Director Defendants' bare reference to relying on "advice provided by Matterport's advisors" does neither.[32]

---

[28] Compl. ¶¶ 98-99 (making claims under 6 *Del. C.* § 8-401(a)); *see Diamond State Tel. Co. v. Vetter*, 1978 WL 22027, at *2 (Del. Ch. Apr. 27, 1978) (explaining that a party need not answer interrogatories that "seek to have the defendants disclose in advance the facts on which they will rely to negate the legal theories which plaintiff has not yet established").

[29] *See* Pl.'s MTC Interrogs. Ex. F at 6.

[30] *Id.* ¶ 10.

[31] *Drachman v. BioDelivery Scis. Int'l, Inc.*, 2021 WL 3779539, at *7 (Del. Ch. Aug. 25, 2021) (quoting *Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 419 (Del. 2010)).

[32] *E.g.*, *In re William Lyon Homes S'holder Litig.*, 2008 WL 3522437, at *3-4 (Del. Ch. Aug. 8, 2008) (denying a movant's motion to compel disclosure of privileged communications and ruling that privilege was not waived and privileged communications were not placed "at issue").

Finally, Brown complains that the defendants have improperly relied on Rule 33(d).[33] This rule allows a party responding to an interrogatory to "specify the records from which the answer may be derived or ascertained" where "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served."[34] Certain of the defendants' responses cite to the rule without identifying documents. But the defendants have told Brown that they will identify specific documents upon the completion of document discovery.[35] So long as the defendants follow through, I see no dispute requiring resolution.

## B. Document Production

Brown's other Motion to Compel seeks an order requiring the defendants to run 16 disputed search terms, and to collect and review documents from Matterport's Google Drive along with Google Chat messages from Matterport custodians.[36] This motion is denied, with two possible exceptions.

Regarding search terms, the motion is largely denied. The defendants have already agreed to 188 search terms.[37] Brown proposed 19 more. After meet and

---

[33] Pl.'s MTC Interrogs. ¶ 11.

[34] Ct. Ch. R. 33(d).

[35] Defs.' Opp'n to Pl.'s MTCs ¶ 9; Pl.'s MTC Interrogs. Ex. F at 2-3.

[36] Pl.'s MTC Docs. 13.

[37] *Id.*; *id.* Ex. H at 4-10.

confers, as well as attempted modifications by the defendants, 16 of these 19 terms remain in dispute. The defendants aver that the terms are facially overbroad and not reasonably tailored to capture responsive information.

After reviewing Brown's proposed search terms, the defendants' modifications (to 13 of the 16 terms), and the resulting hit counts, it is apparent that Brown's initial proposals are unjustifiable.[38] One proposed term essentially captures any email sent or received by a Director Defendant that includes "sell," "sale," "share," "transfer," "lock," or "7.10."[39] This would lead to 169,920 incremental document hits (with families) for review. The defendants' random sampling of these documents suggests that about 1% would be responsive.[40]

Another disputed term would capture any document containing "Outlook" plus "share," "stock," or "merger."[41] This search term has 96,254 incremental

---

[38] If Brown does not understand whether the search term hit reports reflected an incremental count between his proposed terms and the defendants' revisions, he should request a meet and confer.

[39] The full term is: "(RJ OR Pittman OR Peter OR Hebert OR Jason OR Krikorian OR Mike OR Michael OR Gustafson OR Lux OR DCM) w/50 (sell* OR lock* OR sale OR share* OR 7.10 OR transfer)." *Id.* Ex. H at 6 n.4.

[40] *Id.* Ex. H at Ex. B.

[41] The full term is: "(Hangout OR Zoom OR Teams OR 'meeting ID' OR 'dial in' OR 'conference room' OR 'one tap' OR Outlook OR 'Event Details') AND (Goldfinger OR Maker OR Share* OR Stock* OR lock* OR restrict* OR 'business combination' OR SPAC OR 'De SPAC' OR DESPAC OR De-SPAC OR merger OR Brown OR PIPE OR Gores OR GHVI OR GHV)." *Id.* Ex. H at 6 n.5.

document hits (with families), and 0 out of the 87 documents sampled were responsive.[42] Requiring the defendants to apply these search terms would be unduly burdensome and disproportionate to the needs of the case, given the low likelihood that the terms would identify any meaningful amount of non-duplicative, responsive information.[43]

Brown has suggested limiters (globally and modifications to four terms).[44] Because the defendants have not provided a hit report for these modified terms, I cannot assess whether they would remain disproportionately overbroad. I ask that the defendants run the revisions Brown proposed and meet and confer with Brown about the results. Should the hit reports and the defendants' random sampling continue to indicate that these terms would require reviewing a significant volume of unresponsive documents, I will be strongly disinclined to require the defendants to apply them. The parties shall file a letter providing a joint status report, attaching the hit report, after their meet and confer.

---

[42] *Id.* Ex. H at Ex. B.

[43] *E.g.*, *Grunstein v. Silva*, 2009 WL 4698541, at *20 (Del. Ch. Dec. 8, 2009) (stating that the court may "limit discovery that is 'unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation'").

[44] Pl.'s MTC Docs. Ex. J at 6.

Regarding Google Chat, the motion is denied. The defendants have represented that none of their document custodians used Google Chat for potentially responsive communications during the relevant period.[45] Each document custodian was interviewed and asked to identify potential data sources.[46] I have no reason to suspect that the document custodians were not forthcoming.[47]

Regarding Google Drive, the motion is denied—with one possible exception. Matterport uses Google Drive for companywide document storage. The defendants identified specific Google Drive folders to collect after conducting custodian interviews. In my experience, share drive folders are typically identified in this manner. But Brown contends that it constitutes impermissible self-selection.

Brown made several proposals to broaden Matterport's collection from Google Drive. Specifically, he suggested that Matterport: (1) provide Brown with a

---

[45] Defs.' Opp'n to Pl.'s MTCs ¶¶ 44-45 & n.16.

[46] *See* Pl.'s MTC Docs. Ex. H at 2.

[47] Brown's insistence that Google Chat communications be produced stems from a lawsuit in the Northern District of California where Matterport admitted that it had failed to preserve Google Chat data for seven former employees. *Stemmelin v. Matterport, Inc.*, 2022 WL 818654, at *1 (N.D. Cal. Mar. 17, 2022); *see* Pl.'s MTC Docs. Ex. N at 4-5. None of those seven former Matterport employees in the Northern District of California case are document custodians in this action. The suggestion that the document custodians here used Google Chat during the relevant period is speculative. If, however, Brown learns during depositions or otherwise that Google Chat was used, he may revisit this issue with the court.

map of the folder structure of Matterport's Google Drive so that he could identify additional folders to collect; (2) apply search terms across Matterport's Google Drive workspace through a desktop version of Google Drive to identify certain folders; or (3) apply search terms across Matterport's full Google Drive. The defendants have told Brown that each option is infeasible or unduly burdensome.

The folder structure map does not exist, and I decline to order Matterport to attempt to create it. Matterport's Google Drive folders lack a folder or directory listing or a structure that can be displayed in the user interface. Matterport would need to manually generate a folder structure map.[48] Requiring Matterport—a public company—to apply search terms across its entire Google Drive is even more problematic. Running the terms across a desktop version of Google Drive to identify folders containing potentially responsive documents seems no different in practice.

Brown argues that the relief he seeks is necessary because a custodian might have forgotten about a folder containing responsive materials. Discovery is necessarily imperfect and involves the risk of human error. That does not entitle a party to hunt through a public company's vast share drive for possible gaps. Should

---

[48] *See* Pl.'s MTC Docs. Ex. H at 2-3; Defs.' Opp'n to Pl.'s MTCs ¶ 40.

Brown learn that relevant share drive folders were overlooked, he may seek relief from the court.[49]

Brown proposed a fourth option in his papers: that the defendants collect documents from and run search terms across folders that Matterport document custodians authored, edited, uploaded, or had access to. This, too, is unwarranted. Matterport's document custodians include its CEO and CFO, who have broad access. That said, it might be appropriate to require Matterport to collect documents on Google Drive that all or a subset of its custodians authored, edited, or uploaded during the relevant time period. This was not the subject of the parties' meet and confer discussions and I lack information about its feasibility. Counsel are directed to confer about this possibility and report back on the outcome of that discussion in the status report letter I requested above.[50]

### C.    Protective Order and Scheduling

Finally, the defendants' Motion for Protective Order and Relief from Scheduling Order seeks to prevent Brown from deposing witnesses now since he

---

[49] Brown identified a "Brown litigation folder" that might not have been reviewed. Pl.'s MTC Docs. ¶ 16. To the extent they have not done so, the defendants shall review the documents in that folder to determine whether it contains responsive, non-privileged information.

[50] *See supra* at p. 12.

maintains he may recall them after remaining written discovery issues are resolved.[51]

Court of Chancery Rule 26(c) permits the court to issue a protective order "for good cause shown" to shield the movant from "annoyance, embarrassment, oppression, or undue burden or expense."[52] This court has broad discretion to "dictate the sequence of discovery."[53] "This court also 'has discretion to resolve scheduling issues and to control its own docket.'"[54]

The defendants have shown good cause for a protective order. Written and document discovery are ongoing. Brown is continuing to serve new discovery—including 100 interrogatories and 39 document requests served on May 15.[55] To require the defendants' witnesses to sit for depositions now, and perhaps again later after written discovery is complete, risks inefficiency and unnecessary burdens.

"[R]epeat depositions are disfavored" for a reason.[56] Preparation for and participation in depositions is disruptive to litigants, stressful for witnesses, and time

---

[51] Defs.' Mot. Protective Order ¶ 26.

[52] Ct. Ch. R. 26(c).

[53] *Sokol Hldgs., Inc. v. Dorsey & Whitney, LLC*, 2009 WL 2501542, at *9 n.45 (Del. Ch. Aug. 5, 2009); *see* Ct. Ch. R. 26(d).

[54] *In re Baker Hughes Inc. Merger Litig.*, 2022 WL 2693031, at *3 (Del. Ch. July 11, 2022) (quoting *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1107 (Del. 2006)).

[55] *See* Dkt. 233; Defs.' Opp'n to Pl.'s MTCs ¶¶ 4, 47.

[56] *Siegman v. Columbia Pictures Entm't, Inc.*, 1993 WL 133068, at *2 (Del. Ch. Apr. 14, 1993).

consuming and costly for all involved. I see no good reason to require the defendants' witnesses sit for depositions twice in this non-expedited case. Brown may, of course, choose to press ahead with depositions before written discovery is complete. But doing so will be at his peril.[57]

Although I will grant a protective order, I decline to continue the trial. The only amendment presently needed to the scheduling order concerns the fact discovery deadline.[58] There seems to be some agreement that the new deadline should be July 31. Should the parties believe that other changes are necessary, such as to the expert discovery or expert report deadlines, the parties shall promptly meet and confer about a revised schedule and present any proposed amended schedules to the court.

## III. CONCLUSION

Brown's motion to compel interrogatory responses is denied.[59] Brown's motion to compel document production is denied, except that the defendants shall run his proposed modifications to certain disputed search terms and the parties shall

---

[57] That is, Brown will not be permitted to re-depose witnesses absent a showing of good cause that he has not presently made. If he insists on deposing the defendants' witnesses before written discovery has concluded, he risks incomplete testimony.

[58] Under the current scheduling order, fact discovery is to end on June 15, 2023. Dkt. 175.

[59] Brown's request for fees incurred in bringing the motion is likewise denied.

meet and confer about the possibility of collecting certain documents from Google Drive as set forth above.[60]  The parties shall file a status report letter, as requested above, after their meet and confer.[61]  The defendants' motion for a protective order is granted, and the scheduling order is hereby amended to provide that the fact discovery deadline is July 31, 2023.  Any further changes to the scheduling order shall be presented in a revised proposed order within five days.  If the parties cannot agree on a schedule, they may each submit a proposed scheduling order accompanied by a letter outlining the areas of disagreement.

Any remaining discovery disputes should be brought to my attention promptly—after a meaningful effort by counsel to reach resolution.  Ideally, disputes should be presented in a single motion rather than through serial, overlapping motions.  Fact discovery must be brought to a close.

To the extent necessary for the foregoing to take effect, IT IS SO ORDERED.

> */s/ Lori W. Will*
> Vice Chancellor

---

[60] Because Brown's motion is largely denied, his request for fees incurred in bringing the motion is denied.  *See* Ct. Ch. R. 37(a)(4)(C); *see Summit Fire & Sec. LLC v. Kolias*, 2022 WL 3572827, at *4 (Del. Ch. Aug. 19, 2022) (denying a request for fees where the movant "prevailed on its motion only in small part").

[61] *See supra* at pp. 12, 15.